# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN E. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-0107 (RMC) |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE BUSH, | ) | |
| President of the United States, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## THE REMAINING FEDERAL DEFENDANTS' MOTION FOR DISMISSAL, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendants, the National Security Agency ("NSA") and the Federal Bureau of

Investigations ("FBI") hereby submit their motion to dismiss plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(5) because plaintiff has failed to comply with the

requirements of this rule by properly serving the United States. Alternatively, defendants seek

summary judgment pursuant to Federal Rule of Civil Procedure 56 because there are no material

facts in dispute and defendants are entitled to judgment as a matter of law.

Plaintiff should take notice that any factual assertions contained in the accompanying

declarations and other attachments in support of defendants' motion will be accepted by the

Court as true unless the plaintiff submits his own affidavit or other documentary evidence

contradicting the assertions in defendants' attachments. See Neal v. Kelly, 963 F.2d 453 (D.C.

Cir. 1992); see also Local Rule 7(h)[1] and Fed. R. Civ. P. 56(e). Fed. R. Civ. P. 56(e) provides

---

[1]Requiring that oppositions to motions for summary judgment "shall" be accompanied by
a "separate concise statement of genuine issues setting forth all material facts as to which it is
contended there exists a genuine issue necessary to be litigated, which shall include references to

that:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein. Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits. When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial. If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

   s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR THE FEDERAL DEFENDANTS

---

the parts of the record relied on to support the statement." LCvR 7(h).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN E. MOORE,                                  )
                                                )
                    Plaintiff,                  )
                                                )         Civil Action No. 07-0107 (RMC)
                                                )
v.                                              )
                                                )
GEORGE BUSH,                                    )
President of the United States, et al.          )
                                                )
                                                )
                    Defendants.                 )
_____)

**THE REMAINING FEDERAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT, OR
ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Defendants, the National Security Agency ("NSA") and the Federal Bureau of

Investigations ("FBI") hereby submit their motion to dismiss plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(5) because plaintiff has never properly served the United

States in this matter, requiring dismissal.  Alternatively because the defendants have met their

obligations pursuant to the Freedom of Information Act ("FOIA") they are entitled to summary

judgment pursuant to Federal Rule of Civil Procedure 56.

**BACKGROUND**

Plaintiff, John E. Moore, filed a complaint in which he named as defendants President

George W. Bush, Senator Bill Nelson, the National Security Agency, the United States

Department of Justice ("DOJ")/the Federal Bureau of Investigation ("FBI"), the Volusia County

Sheriff Department, the Southern Poverty Law Center ("SPLC"), the American Civil Liberties

Union ("ACLU"), and Dependable Civil Process.  Plaintiff's allegations, while bizarre and

fanciful, appear to allege a conspiracy among the defendants relating to certain "brain chip" technology that plaintiff alleges has been implanted in his brain.  On February 26, 2008, the Court dismissed the claims against defendants President Bush, Senator Bill Nelson, the Volusia County Sheriff Department, SPLC and ACLU.  [Docket Entry No. 45].[1]

        As it concerns the current moving defendants, plaintiff contends that he submitted a FOIA request to NSA dated August 31, 2006 in which he requested "a short statement on the existence of Brainwave Technology."  Complaint ("Compl.") ¶ 29.  Plaintiff contends that NSA would neither confirm nor deny the existence of this program.  Id.  Plaintiff further contends he sought information "pertaining to Falls Church, VA, on its use as an example and reference presentation of a similar case."  Id. ¶ 31.  As it concerns the FBI, plaintiff alleges that he requested "the name of the FBI Boston Agent who [he] was interviewed by on October 3, 2000."  Id. ¶ 37.  Plaintiff contends that this agent wrote a report in which he stated that plaintiff has "paranoid tendencies . . . " and indicates that plaintiff believes that he is "being watched."  Id.  Plaintiff contends that this statement "made by some unknown identifiable FBI Agent is not true."  Id.  Plaintiff further contends that on September 5, 2002, he contacted the FBI Office at Daytona Beach, FL, with a FOIA request, and received a reply on February 5, 2003, from the FBI Division Office at Jacksonville, FL indicating that no records were available.  Id. ¶ 40.  Plaintiff contends that on November 4, 2002, he spoke with Agent in Charge C. Bonner of the FBI's Daytona Beach office, to to "ask[ ] for his permission to furnish him with a copy of my case files,

---

[1]To the extent plaintiff attempts to assert claims against NSA based on alleged "brain control," NSA and the FBI incorporate the arguments made by President Bush and Senator Nelson regarding why these claims must fail pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6).

and we could meet and discuss the subject matter." Id. ¶ 41.  Plaintiff contends he left the files at

Agent Bonner's office on November 6, 2002, but never received any response.  Id.

As it regards their responses to plaintiff's FOIA requests, defendants hereby incorporate

their statement of material facts as to which there is no genuine issue.

**ARGUMENT**

**I.    Plaintiff Has Failed to Effect Proper Service of Process on the United States.**

Dismissal is required pursuant to Federal Rule of Civil Procedure 12(b)(5) for

insufficiency of service of process.  Pursuant to Federal Rule of Civil Procedure 4(i)(1)(A),

plaintiff was required to serve a copy of the summons and the complaint on "the United States

attorney or clerical employee designated by the United States attorney in a writing filed with the

clerk of the court or by sending a copy of the summons and . . . complaint by registered or

certified mail addressed to the civil process clerk at the office of the United States attorney . . . ."

In addition, plaintiff was required to send a copy of the summons and complaint "by registered or

certified mail to the Attorney General of the United States . . . ."  Fed. R. Civ. P. 4(i)(1)(A).

Plaintiff was required to serve process within 120 days after filing the complaint.  Fed. R. Civ. P.

4(c)(1); Fed. R. Civ. P. 4(m).  To date, plaintiff has failed to properly serve the United States.

Notably, a review of the docket sheet reveals that no summonses were ever issued to the United

States attorney or the Attorney General of the United States.  And, at this time, the time for

effecting proper service has expired.  Fed. R. Civ. P. 4(c)(1); Fed. R. Civ. P. 4(m).  Plaintiff has

failed to properly serve the United States and therefore dismissal of his complaint is warranted.

II.    **The Defendants Are Entitled to Summary Judgment.**

A.    **Standard of Review**

In general, summary judgment is the procedural vehicle by which most FOIA actions are

resolved.  See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases

should be handled on motions for summary judgment, once the documents in issue are properly

identified.").  While the defendant has the burden of proof on all material issues related to the

merits of any claimed FOIA exemptions, summary judgment is to be freely granted where there

are no material facts in dispute and the agency is entitled to judgment as a matter of law.  See,

e.g., Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988); Hayden v. National

Security Agency, 608 F.2d 1381, 1386-87 (D.C. Cir. 1979) (summary judgment appropriate in

FOIA cases on the basis of affidavits).  Under the FOIA, which supplies the applicable

substantive legal principles, defendant in this case bears the burden of proving three elements:

(1)    "**adequacy of the search**" -- that is, the search for responsive documents was
adequate;

(2)    "**applicability of exemptions**" -- that is, the information withheld from release
falls within an exemption from the FOIA's general requirement that information
be released; and

(3)    "**reasonable segregability**" -- that is, the "reasonably segregable," non-exempt
information has been disclosed after deletion of the exempt information.

See Public Employees for Environmental Responsibility v. United States Dep't of the Interior,

No. Civ.A. 06-182, 2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006) (holding that agency had

"met its summary judgment burden by demonstrating that it fully discharged its FOIA obligations

by conducting a reasonable and adequate search for documents, properly invoking applicable

FOIA exemptions, and releasing all reasonably segregable factual materials from responsive

documents.") (citations omitted).  See also NYC Apparel FZE v. United States Customs &

Border Protection, 484 F. Supp. 2d 77, 86 (D.D.C. 2007) ("'[A]gency entitled to summary

judgment if no material facts are in dispute and if it demonstrates that each document that falls

within the class requested has been produced . . . or is wholly[, or partially] exempt [from

disclosure].'") (quoting Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C.

Cir. 2001).  In this case, NSA and the FBI have each fully discharged their obligations under the

FOIA.

> ### A.    NSA is Entitled to Summary Judgment.
>
> #### 1.    NSA Conducted a Proper Search for Records Responsive to Item 1 of Plaintiff's FOIA Request.

First, NSA conducted a proper search for records in regards to item 1 of plaintiff's FOIA

request.  As it concerned item one of plaintiff's request, which sought any and all information

relating to himself, NSA conducted a search for responsive records using plaintiff's name as the

search term.  Siers Decl. ¶ 13.  The agency searched all of its databases that would contain

information on current or former NSA affiliates (i.e., employees, applicants, military members,

contractors, and visitors).  Id.  No responsive records were located.  Id.

The fact that the agency's search resulted in no records being located does not render the

search inadequate.  See, e.g., Neal v. Snow, No. Civ.A. 06-1124, 2007 WL 1169339, at *3

(D.D.C. Apr. 19, 2007) (holding that search was reasonable where, despite not locating any

records, agency's  search was "reasonable" and conducted where "responsive records would

likely have been located.").  See also Trans Union LLC v. Federal Trade Comm'n, 141 F. Supp.

2d 62, 68 (D.D.C. 2001) ("[A]n agency's inability to locate every single responsive [document]

does not render an otherwise diligent search unreasonable.") (citations omitted).  Rather, the standard is whether the search was reasonably designed to discover responsive records, if they existed.  The search in this case meets that standard.  Landmark Legal Foundation v. EPA, 272 F. Supp. 2d 59 (D.D.C. 2003) (holding that agency's search was adequate where agency's search "was not confined to one office or region, [and agency] searched all components of the agency.") (citation omitted).

### 2.    The Agency Properly Invoked FOIA Exemptions 1 and 3.

Because plaintiff requested all records that NSA maintains on him, NSA also responded to his request as if plaintiff had asked for records on the "surveillance, targeting, and/or domestic collection of him by NSA."  Siers Decl. ¶ 14.  However, NSA "cannot acknowledge the existence or non-existence of information concerning the targets of its surveillance efforts, as any such response would disclose information that is currently and properly classified in accordance with Executive Order 12958, as amended."  Id.[2]  As explained in the Siers declaration, "the release of any confirmation or denial that a particular individual, organization, etc. has been or is a target is precluded by three statutes - section 6 of the National Security Agency Act of 1959; 18 U.S.C. § 798; and Section 102(A)(i)(1) of the Intelligence Reform and Terrorism Act of 2004."  Id.  Thus, if the Court considers plaintiff's request to encompass a request for information regarding whether he was a target of NSA's surveillance efforts, then the existence or non-

---

[2]  Such a response finds support in the case of Phillippi v. Central Intelligence Agency, 546 F.2d 1009, 1010-1012 (D.C. Cir. 1976), and is often referred to as a "Glomar" response, after the ship referred to in the Phillippi decision.  In Phillippi, the requester sought information regarding the "Hughes Glomar Explorer," a supposed merchant vessel, and the CIA refused to confirm or deny whether it had any relationship with the vessel on the grounds that to do so could compromise national security (Exemption 1) or could divulge information pertaining to intelligence sources and methods (Exemption 3).  Id. at 1010-1012.

existence of this information is exempt from disclosure pursuant to FOIA Exemptions 1 and 3 of the FOIA.  Id.

FOIA Exemption 1 protects the release of matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order.  See 5 U.S.C. § 552(b)(1).  The current Executive Order, which establishes such criteria, is Executive Order 12958, as amended March 25, 2003.  Siers Decl. ¶ 15.  Section 1.4 of Executive Order 12958 provides that information may not be considered for classification unless it falls within one (or more) of seven specifically enumerated categories of information.  Id. ¶ 16.  The information at issue here - confirmation of whether plaintiff was or was not a target of NSA's surveillance efforts - pertains to categories of classified information found in Section 1.4(c), intelligence activities (including special activities), intelligence sources and methods, or cryptology; and Section 1.4(g), vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, including defenses against transnational terrorism.  Id.

In addition, confirming the existence or non-existence of the information sought would disclose information that is currently and properly classified as TOP SECRET pursuant to Section 1.2(1) of Executive Order 12958, as amended.  Id. ¶ 17.  Such a positive or negative response could reasonably be expected to cause exceptionally grave damage to the national security because confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow adversaries to accumulate information and draw

7

conclusions about NSA's technical capabilities, sources, and methods. Id. Disclosure of this information would equip adversaries with a roadmap instructing them as to which communications modes and personnel remain safe or are successfully defeating NSA's capabilities. Id.

The testimony set forth in the Siers declaration amply supports the application of Exemption 1 in this case. It is unnecessary for NSA to establish with certainty that damage to our national security would result from release of the redacted classified information. Halperin v. Central Intelligence Agency, 629 F.2d 144, 149 (D.C. Cir. 1980). "The question that Congress has placed before us is only whether the predicted danger is a reasonable expectation; and it is precisely on this point that a court, lacking expertise in the substantive matters at hand, must give substantial weight to agency statements, so long as they are plausible and not called into question by contrary evidence or evidence of agency bad faith." Id. at 149; see also Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1106 (D.C. Cir. 1982) (substantial deference is due to the CIA's determination regarding threats to national security interests because this is "necessarily a region for forecasts in which the CIA's informed judgment as to potential future harm should be respected.").

Exemption 3 was also properly relied upon by NSA. Exemption 3 protects from disclosure information that is specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld. 5 U.S.C. § 552(b)(3). The information sought by item one of plaintiff's request falls squarely within the scope of several statutes that require matters to

8

be withheld.  Siers Decl. ¶ 19.  First, information about NSA's SIGNIT efforts directly relates to the agency's core functions and activities.  Id.  Congress has passed these statutes to protect the fragile nature of NSA's SIGNIT efforts, including, but not limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses, and exploitation techniques.  Id. These statutes recognize the vulnerability of SIGINT to countermeasures by targets and the intelligence community.  Id.

The first of these statutes is a statutory privilege unique to NSA.  Id. ¶ 20.  As set forth in Section 6 of the National Security Agency Act of 1959, Public Law 86-36, 50 U.S.C. § 402, "nothing in this Act or any other law . . . shall be construed to require the disclosure of the organization of any function of the National Security Agency, [or] of any information with respect to the activities thereof . . . ."  Section 6 states unequivocally that, notwithstanding any other law, NSA cannot be compelled to disclose any information with respect to its activities. Id.; see also Siers Decl. ¶ 20.  In enacting this statutory provision, Congress determined that disclosure of any information relating to NSA activities is potentially harmful.  Id. ¶ 20.  Federal courts have held that the protection afforded by this statutory privilege is, by its very terms, absolute.  See, e.g., Linder v. NSA, 94 F.3d 693 (D.C. Cir. 1996).

The second statute that is applicable is 18 U.S.C. § 798.  Id. ¶ 21.  This statute prohibits the unauthorized disclosure of classified information (i) concerning the communications intelligence activities of the United States or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government.  Id.; Siers Decl. ¶ 21. The terms "communications intelligence" as defined by 18 U.S.C. § 798 means the procedures and methods used in the interception of communications and obtaining of information from such

9

communications by other than the intended recipients.  Id.  Because this statute clearly identifies the matters to be withheld from the public and refers to the particular types of matters to be withheld, it qualifies as a statutory basis for the withholding of the information sought by plaintiff pursuant to Exemption 3.  See 5 U.S.C. § 552(b)(3).

The third applicable statute is Section 102A(i)(1) of the Intelligence Reform and Terrorist Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), which provides that "the Director of National Intelligence shall protect intelligence sources and methods from authorized disclosure." (Emphasis added).  Again, this statutory language is absolute.

In light of these statutory provisions, the agency properly refused to confirm or deny that it had information concerning plaintiff pursuant to Exemption 3.  See, e.g., Linn v. United States Dep't of Justice, No. Civ.A. 92-1406, 1995 WL 631847, at *30 (D.D.C. Aug. 22, 1995) (holding that "absolute language" of applicable statute eliminated "any possibility of agency discretion" . . . [t]hus the provision satisfies the requirement of Exemption 3 . . . .").  See also Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1284 (D.C. Cir. 1983) (To uphold non-disclosure under Exemption 3, there must be a qualifying disclosure-prohibiting statute and the logical inclusion of the withheld records within the scope and coverage of that statute).

### 3.    The Agency Properly Found that Items 2-4 of Plaintiff's Request Did Not Fall Within the Agency's Purview.

As it concerns items two-four of his request, in which plaintiff requested a short and plain statement pertaining to the existence of brainwave technology, whether the system instruction was disseminated at Falls Church, VA, and whether the detector chip was implanted in the temporal bone area, these items do not fall within the agency's purview.  Siers Decl. ¶ 24.  As

described in the Siers declaration, NSA has three functions: (1) to collect, process, and disseminate signals intelligence information for national foreign intelligence purposes; (2) to conduct information security activities; and (3) to conduct operations security training for the United States Government.  Id.

Because items 2-4 do not fall within NSA's functions, a search for records would not have been productive, and the FOIA does not require the agency to respond to such a request.  Id. The FOIA only concerns requests for agency records – it does not compel a Federal agency to create a record or answer substantive questions.  Id.; see also 5 U.S.C. § 552(a)(3)(A), (f)(2). Nor does FOIA require an agency to conduct "legal research" for a requester.  Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985), aff'd, 808 F.2d 137 (1987), cert. denied, 484 U.S. 803 (1987).   For these reasons, the agency properly informed plaintiff that items 2-4 of his request did not fall within the purview of NSA and that a search for records would not be productive. Siers Decl. ¶ 24.

> **B.**     **The FBI is Entitled to Summary Judgment.**
>
> **1.**     **Plaintiff Failed to Exhaust His Administrative Remedies Concerning his Requests Submitted to JFO and FBIHQ.**

Prior to filing a lawsuit, a FOIA requester is required to fully exhaust his administrative remedies.  Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986).  A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including: (1) failure to provide the required proof of identity, Summers v. United States Dep't of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993); (2) failure to reasonably describe the records being

sought, Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992); (3) failure to comply with fee requirements, Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) **failure to administratively appeal a denial of information**, Oglesby v. United States Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990) (emphasis added).  Where a FOIA plaintiff attempts to obtain judicial review without first properly undertaking full administrative exhaustion, his lawsuit is subject to immediate dismissal.  Id.

"The statutory scheme in the FOIA specifically provides for an administrative appeal process following an agency's [response to] a FOIA request."  Bestor, 2005 WL 3273723, at *2. Furthermore, "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts."  Id. (citation and internal quotation marks omitted) (emphasis added).  Here, searches of the FBIHQ and JFO revealed no records responsive to plaintiff's request.  Hardy Decl. ¶¶ 14, 17.  Plaintiff never appealed the "no records" determination  Id. ¶¶ 16, 44.  He has therefore failed to exhaust his administrative remedies as it concerns these requests.  See Oglesby, 920 F.2d at 57.

## 2. Summary Judgment is Warranted as it Concerns Plaintiff's Request to the FBI BFO.

### (a.) A proper search was performed.

Summary judgment is also warranted as it concerns plaintiff's request submitted to the FBI's BFO.  First, the agency has demonstrated that it conducted a proper search for documents. In response to plaintiff's request, the FBI initiated a search of its BFO general indices to identify all potentially responsive files.  Hardy Decl. ¶ 26.  A search was conducted by using the name "Moore, John Edmond," which would cover a phonetic breakdown of the first, middle and last

names.  Id.  This search would have located records using the phonetic sounds of "Moore, John

Edmond," "Moore, John E.," "Moore, John" "Moore, J. Edmond," "Moore, Edmond," and

"Moore, J.E."  Id.  The BFO also used plaintiff's date of birth and social security number to

facilitate the identification of responsive records.  Id.  This search resulted in the identification of

two pages of responsive records.  Id.

        In responding to a FOIA request, an agency is under a duty to conduct a good faith search

for responsive records, "using methods which can be reasonably expected to produce the

information requested."  Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir.

1990) (citations omitted); Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary,

Gottlieb, Steen & Hamilton v. Dep't of Health & Human Services, 844 F. Supp. 770, 776

(D.D.C. 1993).  This "reasonableness" standard focuses on the method of the search, not its

results.  Cleary, Gottlieb, 844 F. Supp. at 777 n.4 (citing Meeropol v. Meese, 790 F.2d 942, 952-

53 (D.C. Cir. 1986)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).

The search standards under the FOIA do not require an agency to prove that all responsive

documents have been located.  Nation Magazine v. United States Customs Serv., 71 F.3d 885,

892 n.7 (D.C. Cir. 1995) (citation omitted).  Instead, "the search need only be reasonable; it does

not have to be exhaustive."  Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing

Shaw v. Dep't of State, 559 F. Supp. 1053, 1057 (D.D.C. 1983)).  Here, the FBI searched the

system of records most likely to contain all potentially responsive files.  Hardy Decl. ¶ 26.

Searches were performed using plaintiff's name, as well as his date of birth and social security

number.  Id.  And all places at BFO likely to contain responsive documents were searched.  Id. ¶

28.  These searches satisfy the requirements under the FOIA.

Furthermore, the FBI subsequently conducted a second search of the CRS for BFO files to ensure the accuracy of its original response using the same search terms described above.  Id. ¶ 27.  The CRS enables the FBI to maintain information which it has acquired through the course of fulfilling its mandated law enforcement responsibilities.  Id. ¶ 20.  Using plaintiff's date of birth, Manual Indices were also checked at the BFO for records indexed to plaintiff's name, however, these searches did not result in any additional records responsive to plaintiff's request.  As explained supra at 5-6, this fact alone does not render the search inadequate.  Finally, while an additional possibly relevant document was revealed, no further corroboration could be established because the file containing the document was destroyed on January 18, 2007 pursuant to the routine record destruction policies at the BFO.  Id. ¶ 27.

### (b.) The Agency Properly Withheld Information Pursuant to Exemptions 6 and 7(C).

There were two pages of responsive materials that were located in response to plaintiff's FOIA request submitted to the BFO.  Hardy Decl. ¶ 26.  The only information withheld – the name of one FBI Special Agent ("SA") and the name and telephone of one FBI support professional support employee – were withheld pursuant to Exemptions 6 and 7(C).

Exemption 6 permits the withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'"  Judicial Watch v. Food & Drug Admin., 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting United

14

States Dep't of State v. Washington Post Co., 456 U.S. 595, 601 (1982)).  Thus, information

meets the threshold requirement of Exemption 6 if it "applies to a particular individual."

Washington Post Co., 456 U.S. at 602.  Clearly, the information at issue here meets this

threshold requirement as the information at issue applies to an FBI SA and a support employee.

See New York Times Co. v. National Aeronautics & Space Admin., 920 F.2d 1002, 1006 (1990)

("The information need not be intimate; the threshold for application of Exemption 6 is crossed if

information merely 'applies to a particular individual.'") (quoting Washington Post Co., 456 U.S.

at 602).  Furthermore, the privacy interests implicated outweigh any public interest in the

disclosure of the information.  Releasing information concerning the FBI SA involved in the

interview of plaintiff could seriously hamper this individual's effectiveness in conducting future

investigations, as well as possibly exposing that individual to animosity for his participation in

the interview.  Hardy Decl. ¶ 35.  As it concerns the FBI professional support employee,

releasing this employee's name and telephone number serves no public interest.  Id. ¶ 36.

However, release of that information could cause the employee to become a target of harassing

inquiries for unauthorized access to investigations if his/her identity was revealed.  Id.  Thus, this

information was properly withheld pursuant to Exemption 6.  And, notably, nowhere does

plaintiff explain what public interest would be served by disclosure.  NARA v. Favish, 541 U.S.

157, 174-75 (2004) ("Only when the FOIA requester has produced evidence sufficient to satisfy

[the public interest standard] will there exist a counterweight on the FOIA scale for the court to

balance against the cognizable privacy interest in the requested records.").  For these reasons, the

information was properly withheld pursuant to Exemption 6.

Similarly, these reasons support the withholding of this same information pursuant to

Exemption 7(C).  Exemption 7(C) exempts from mandatory disclosure under the FOIA information that has been compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); see Nation Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995); SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991).[3]

A privacy interest sufficient to justify application of Exemption 7(C) has been found to exist in a wide variety of circumstances:  (1) the identities of suspects and witnesses who are identified in agency records in connection with law enforcement investigations[4]; (2) the names of law enforcement officers who work on criminal investigations[5] and individuals who provide information to law enforcement authorities.[6]  All of these categories of individuals have protectable privacy interests in their anonymity.  Withholding such information traditionally has been protected by courts because release would reveal nothing about the operations and activities

---

[3]In relevant part, Exemption 7(C) exempts from disclosure:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § 552(b)(7)(C).

[4]Reporters Committee for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730, 740-41 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

[5]Davis v. United States Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. United States Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).

[6]Computer Prof'ls, 72 F.3d at 904; Farese v. United States. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

16

of the government and could invade well-recognized privacy interests.  See, e.g., Manna v.

United States Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995), cert. denied, 516 U.S. 975

(1995); Jones v. FBI, 41 F.3d 238, 246-47 (6th Cir. 1994).  The same result is warranted here.

Here, the FBI withheld the name of one FBI SA because his assignment to investigations

is not by choice and publicity concerning his involvement in a particular investigation could

seriously hamper his effectiveness in conducting future investigations.  Hardy Decl. ¶ 42.  FBI

agents interact with all strata of society and conduct searches and make arrests, both of which

constitute reasonable, but serious, intrusions, into people's lives.  Id.  Many persons carry

grudges against these agents that last for years and seek to harass the agent they deem responsible

for the intrusion.  Id.  The publicity associated with the release of an FBI Agent's identity in

connection with a particular investigation, such as the FBI's interview of the plaintiff here, could

rekindle animosity towards that agent.  Id.  Furthermore, there is no public interest served by

release of the information.  Id.

### (c.)     All Reasonably Segregable Information was Released.

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d

242, 260 (D.C. Cir. 1977).  The agency must provide a "detailed justification" to demonstrate

that all reasonably segregable information has been released, id. at 261, and show "with

reasonable specificity" why protected information cannot be further segregated.  Armstrong v.

Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  The Government can

meet its burden of demonstrating that all reasonable segregable information has been released by means of affidavits or declarations.  See, e.g., Armstrong, 97 F.3d at 578 (affirming district court's finding that the agency had met its burden on the "reasonable segregability" issue, court stated:  "The government affidavits provided here show with "reasonable specificity" why the documents cannot be further segregated."); see Quinon v. Federal Bureau of Investigation, 86 F.3d 1222, 1227 (D.C. Cir.1996); Mead Data Central, 566 F.2d at 261.

Here, the Hardy declaration explains that each of the two pages of records responsive to plaintiff's request to the BFO "was individually reviewed for segregability."  Hardy Decl. ¶ 44. In addition, the records that were produced to plaintiff, which are attached as Exhibit I to the Hardy declaration, reveal that limited information was redacted.  Jointly, these materials demonstrate to the Court that the agency has released all reasonably segregable material to the plaintiff.

## CONCLUSION

For the reasons set forth above, Defendants the FBI and NSA respectfully request that judgment be entered in their favor.

Respectfully submitted,

  s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

  s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910

18

Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR THE FEDERAL DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>16th</u> day of May, 2008, a copy of the foregoing The

Remaining Federal Defendants' Motion for Summary Judgment was mailed, via first-class mail,

postage pre-paid to:

John E. Moore
9 Pleasant View Circle
Daytona Beach, FL 32118


    /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
555 4th St., N.W.  Room E4212
Washington, D.C. 20530
202-514-7139

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                          )
                                        )
            Plaintiff,                  )
                                        )        Civil Action No. 07-0107 (RMC)
                                        )
v.                                      )
                                        )
GEORGE BUSH,                            )
President of the United States, et al.  )
                                        )
                                        )
            Defendants.                 )
_____ )


## THE REMAINING FEDERAL DEFENDANTS' STATEMENT
## OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 56.1 and 7(h), the remaining federal defendants, the National Security

Agency ("NSA") and the Federal Bureau of Investigation ("FBI") hereby file their statement of

material facts as to which there is no genuine issue.

**I.**     **Plaintiff's Freedom of Information ("FOIA") Request Submitted to the National Security Agency ("NSA").**

      **A.**     **NSA's Mission**

1.     NSA was established by Presidential Directive in October 1952 as a separately organized

agency within the Department of Defense.  Declaration of Rhea D. Siers ("Siers Decl.") ¶ 3.

2.     "NSA's cryptologic mission has three functions: to collect, process and disseminate

SIGINT[1] information for national foreign intelligence purposes; to conduct information security

activities; and to conduct operations security training for the U.S. Government."  Id.

---

[1]SIGINT is Signals Intelligence, which is one of NSA's primary functions.  Siers Decl. ¶ 4.

3.      There are two primary purposes for gathering and analyzing intelligence information. First, and primarily, this information is "required to direct U.S. resources as necessary to counter external threats." Id. ¶ 6.  Second, the information is "necessary to direct [the] foreign policy of the United States." Id.

4.      "Information produced by SIGNIT is relevant to a wide range of important issues, including military order of battle, threat warnings and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics trafficking." Id.

5.      NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Id. ¶ 8.  In addition, SIGNIT technology is both expensive and fragile. Id.  Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Id.  Disclosure of even a single communication could potentially reveal the intelligence collection techniques that are applied against targets around the world and, once alerted, SIGNIT targets can easily frustrate SIGNIT collections. Id.

6.      Information obtained from intercepted foreign communications is called communications intelligence ("COMINT"). Id. ¶ 9.  A fundamental tenet of COMINT is that the identity of specific communications (commonly referred to as targets), the degree of success in exploiting these targets, the vulnerability of particular foreign communications, and the extent of any cryptologic successes are all matters that must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications. Id.  Disclosure of the identity of the targets, the degree of success or weakness in exploiting those targets, the vulnerability of particular foreign communications, and the extent of any cryptologic success would encourage

2

countermeasures by targets of NSA's COMINT efforts.  Id.  If a target was successful in

defeating an intercept operation, all of the intelligence from that source would be lost unless and

until NSA could establish new and equivalent exploitation of the foreign power's signals.  Id.  If

a source becomes unavailable, the military, national policymakers, and the intelligence

community must operate without the information signals provided.  Id.  Such losses are

extremely harmful to the national security of the United States.  Id.

**B.     Plaintiff's FOIA Request.**

7.     In a letter dated August 31, 2006, which was received by NSA's Office of Policy on

September 5, 2006, John E. Moore submitted a request pursuant to the Freedom of Information

Act ("FOIA") to NSA.  Compl. ¶ 29; Siers Decl. ¶ 10; Siers Decl. Ex. A (FOIA Request dated

August 31, 2006).

8.     Plaintiff's FOIA request sought the following:  (1) information pertaining to

himself that may be in NSA's database; (2)  "a short statement pertaining to the existence of

brainwave technology . . ."; (3) whether "the system instruction disseminated at Falls Church,

VA within the time frame [of 1996]," and (4) whether "the system detector chip implanted in the

temporal bone area." Siers Decl., Ex. A.  Plaintiff also requested a waiver of fees for this request

and indicated that the information was for his "own personal use."  Id.

9.     NSA responded to plaintiff's request in a letter dated September 15, 2006.  Siers Decl.  ¶

11; Siers Decl., Ex. B.  In response to item 1 of plaintiff's request, plaintiff was informed that "a

search of [NSA's] most comprehensive filing systems which include applicant, personnel,

security, medical, and training was conducted pursuant to the Privacy Act.  Our records reflect

that you have never been affiliated with this Agency; thus no records were located in a search of

those filing systems." Id.; see also Siers Decl. ¶ 11.

10.     NSA also informed plaintiff that the President of the United States had authorized NSA "consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." Id.; Siers Decl., Ex. B. The agency informed plaintiff "because of the classified nature of the [NSA's] efforts to prevent and protect against terrorist attacks . . . ." that it could "neither confirm nor deny whether any records relating to you under this program exist, or whether any specific technique or method or activity is employed in that effort." Siers Decl., Ex. B. Plaintiff was informed that "[t]he fact of the existence or non-existence of responsive records is currently and properly classified matter in accordance with Executive Order 12958, as amended[,]" and that there were specific statutes exempting the information. Id. Plaintiff was informed that this information was therefore being withheld pursuant to the first and third exemptions of FOIA. Id.; see also Siers Decl. ¶ 11.

11.     As it pertained to items 2-4 of plaintiff's request, plaintiff was informed that while FOIA allows the public to access agency records that are not exempted from disclosure, it "does not compel government agencies to create a record or to answer substantive questions." Siers Decl., Ex. B, at 2. Plaintiff was also informed that in light of NSA's/Central Security Service's ("CSS") mission, a search would not be productive because the information he sought did not fall within the agency's purview. Id. at 3. A fact sheet describing NSA/CSS' mission was enclosed with the agency's response. Id.

12.     Because there were no assessable fees for plaintiff's request, plaintiff's request for a waiver of fees was not addressed. Id. at 1.

13.     In a letter dated September 25, 2006, plaintiff appealed NSA's response to his August 31,

4

2006 request.  Siers Decl., Ex. C (FOIA Appeal dated September 25, 2006); Siers Decl. ¶ 12.  In

his appeal, plaintiff indicated that the agency had "satisfactorily answered my question

one and three."  Id.

14.    However, as it concerned his second and fourth questions, plaintiff requested additional

information.  Siers Decl., Ex.C.  Specifically, plaintiff asked whether "the NSA/CSS [is]

monitoring or in control of the milli hertz frequency range?  Which is in the Brainwave data

spectrum."  Id.  Plaintiff indicated that he was "very interested in the use of torture procedures

tying in with Brainwave Technology, or to be more specific.  EBL (Brain Link).  I would like any

information that you could provide in the NSA/CSS use of this spectrum."  Id.  Plaintiff further

noted that he is not "a foreign national, nor am I related to any terrorist organization[,]" and that

he is retired from the "U.S. Government as a civilian employee and also was a Member of the

U.S. Navy."  Id. at 1-2.

15.    NSA treated plaintiff's September 25, 2006 letter as an appeal of the agency's denial

of information concerning items 2 and 4 of plaintiff's FOIA request.  Siers Decl. ¶ 12.  The

agency responded to plaintiff's appeal in a letter dated February 13, 2007.  Siers Decl., Ex. D

(Letter dated February 13, 2007).

16.    In its February 13th letter, the agency informed plaintiff again that "requests for records

about brainwave technology and the implantation of chips in the human brain do not relate to

NSA's mission . . . . Therefore, the information you request does not fall within the purview of

this Agency, and a search for records responsive to your request would not be productive." Siers

Decl., Ex. D.

17.    Additionally, plaintiff was again informed that "NSA is not required by FOIA to answer

questions – its obligation is to release responsive records if not exempt." Id.

        **C.**      **NSA's Processing of Plaintiff's Request.**

18.      As it concerned item one of plaintiff's request, which sought any and all information

relating to himself, NSA conducted a search for responsive records using plaintiff's name as the

search term. Siers Decl. ¶ 13. The agency searched all of its databases that would contain

information on current or former NSA affiliates (i.e., employees, applicants, military members,

contractors, and visitors). Id. No responsive records were located. Id.

19.      Because plaintiff requested all records that NSA maintains on him, NSA also responded

to his request as if plaintiff had asked for records on the "surveillance, targeting, and/or domestic

collection of him by NSA." Id. ¶ 14. However, NSA "cannot acknowledge the existence or non-

existence of information concerning the targets of its surveillance efforts, as any such responsive

would disclose information that is currently and properly classified in accordance with Executive

Order 12958, as amended." Id. In addition, "the release of any confirmation or denial that a

particular individual organization, etc. has been or is a target is precluded by three statutes -

section 6 of the National Security Agency Act of 1959; 18 U.S.C. § 798; and Section

102(A)(i)(1) of the Intelligence Reform and Terrorism Act of 2004." Id. Thus, if the Court

considers plaintiff's request to encompass a request for information regarding whether he was a

target of NSA's surveillance efforts, then the existence or non-existence of this information is

exempt from disclosure pursuant to FOIA Exemptions 1 and 3 of the FOIA. Id.

**D.    NSA's Claimed Exemptions.**

1.    **Item 1 of Plaintiff's Request is Exempted from Disclosure Pursuant to FOIA Exemptions 1 and 3.**

**Exemption 1**

20.    FOIA Exemption 1 protects the release of matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order.  See 5 U.S.C. § 552(b)(1).  The current Executive Order, which establishes such criteria, is Executive Order 12958, as amended March 25, 2003.  Siers Decl. ¶ 15.

21.    Section 1.4 of Executive Order 12958 provides that information may not be considered for classification unless it falls within one (or more) of seven specifically enumerated categories of information.  Id. ¶ 16.  The information at issue here - confirmation of whether plaintiff was or was not a target of NSA's surveillance efforts - pertains to categories of classified information found in Section 1.4(c), intelligence activities (including special activities), intelligence sources and methods, or cryptology; and Section 1.4(g), vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, including defenses against transnational terrorism.  Id.

22.    In addition, confirming the existence or non-existence of the information sought would be to disclose information that is currently and properly classified as TOP SECRET pursuant to Section 1.2(1) of Executive Order 12958, as amended.  Id. ¶ 17.  Such a positive or negative response could reasonably be expected to cause exceptionally grave damage to the national security because confirmation by NSA that a person's activities are not of foreign intelligence

interest or that NSA is unsuccessful in collecting foreign intelligence information on their

activities on a case-by-case basis would allow adversaries to accumulate information and draw

conclusions about NSA's technical capabilities, sources, and methods.  Id.  Disclosure of this

information would equip adversaries with a roadmap instructing them as to which

communications modes and personnel remain safe or are successfully defeating NSA's

capabilities.  Id.

23.     For example, if NSA were to admit publicly in response to a FOIA request that no

information about Persons X,Y, and Z exist, but in response to a request by Person T indicate

that no response could be made, this would give rise to the inference that Person T is in fact a

target of NSA's surveillance efforts.  Id.  These inferences would disclose the targets and

capabilities (i.e., NSA's sources and methods) of NSA's SIGNIT activities and functions and

inform adversaries of the degree to which NSA is aware of some of their operatives or is able to

successfully exploit particular communications.  Id.  Thus, NSA cannot respond to each FOIA

request in isolation but must acknowledge that adversaries can examine all responsive

information together.  Id.

24.     This compilation of information, if disclosed, could reasonably be expected to cause

exceptionally grave and irreparable damage to the national security of the United States.  Id.

Therefore, the fact of the existence or nonexistence of the information requested in item 1 is

currently and properly classified matter in accordance with Executive Order 12958, as amended,

and thus item 1 of plaintiff's request was properly denied pursuant to Exemption 1 of the FOIA.

Id.

**Exemption 3**

25.     Information in response to item one of plaintiff's request was also protected from

disclosure by Exemption 3, which protects from disclosure information that is specifically

exempted from disclosure by statute, provided that such statute (A) requires that the matters be

withheld from the public in such a manner as to leave no discretion on the issue, or (B)

establishes particular criteria for withholding or refers to particular types of matter to be

withheld.  5 U.S.C. § 552(b)(3).

26.     The information sought by item one of plaintiff's request falls squarely within the scope

of several statutes that require matters to be withheld.  Siers Decl. ¶ 19.  First, information about

NSA's SIGNIT efforts directly relates to the agency's core functions and activities.  Id.  Congress

has passed these statutes to protect the fragile nature of NSA's SIGNIT efforts, including, but not

limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses,

and exploitation techniques.  Id.  These statutes recognize the vulnerability of SIGINT to

countermeasures by targets and the intelligence community.  Id.

27.     The first of these statutes is a statutory privilege unique to NSA.  Id. ¶ 20.  As set forth in

Section 6 of the National Security Agency Act of 1959, Public Law 86-36, 50 U.S.C. § 402,

"nothing in this Act or any other law . . . shall be construed to require the disclosure of the

organization of any function of the National Security Agency, [or] of any information with

respect to the activities thereof . . . ."  Section 6 states unequivocally that, notwithstanding any

other law, NSA cannot be compelled to disclose any information with respect to its activities.

Id.; see also Siers Decl. ¶ 20.  In enacting this statutory provision, Congress determined that

disclosure of any information relating to NSA activities is potentially harmful.  Id. ¶ 20.  Federal

courts have held that the protection afforded by this statutory privilege is, by its very terms, absolute.  See, e.g., Linder v. NSA, 94 F.3d 693 (D.C. Cir. 1996).

28.     When invoking this statutory privilege, NSA is not required to demonstrate specific harm to national security, but need only show that the information relates to the organization or any function of the agency.  Siers Decl. ¶ 20.  To invoke this privilege, NSA must demonstrate only that the information sought to be protected falls within the scope of Section 6.  Id.  NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified.  Id.

29.     The second statute that is applicable is 18 U.S.C. § 798.  Id. ¶ 21.  This statute prohibits the unauthorized disclosure of classified information (i) concerning the communications intelligence activities of the United States or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government.  Id.; Siers Decl. ¶ 21. The terms "communications intelligence" as defined by 18 U.S.C. § 798 means the procedures and methods used in the interception of communications and obtaining of information from such communications by other than the intended recipients.  Id.  Because this statute clearly identifies the matters to be withheld from the public and refers to the particular types of matters to be withheld, it qualifies as a statutory basis for the withholding of the information sought by plaintiff pursuant to Exemption 3.  See 5 U.S.C. § 552(b)(3).

30.     The third applicable statute is Section 102A(i)(1) of the Intelligence Reform and Terrorist Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), which provides that "the Director of National Intelligence shall protect intelligence sources and methods from authorized disclosure."

31.     NSA, as a member of the intelligence community, must also protect intelligence sources

and methods.  Siers Decl. ¶ 22.  Whether the sources and methods at issue are classified is not

relevant for purposes of the protection afforded by 50 U.S.C. § 403-1(i)(1).  Id.

32.    Acknowledging the existence or nonexistence of the information plaintiff requests in item

1 would reveal NSA's organization, functions and activities by revealing the success or failure of

NSA's activities.  Siers Decl. ¶ 23.  Revelation of this information is prohibited pursuant to

Section 6 of Public Law 86-36.  Id.  Furthermore, disclosing this information would reveal the

limitations of NSA's SIGINT capabilities, the revelation of which is prohibited by 18 U.S.C. §

798.  Id.  Finally, release of this information would reveal the intelligence sources and methods

that NSA uses to obtain this information.  Id.  Therefore, revelation of this information is

prohibited pursuant to Section 102(A)(i)(1) of the Intelligence Reform and Terrorist Prevention

Act of 2004.  Id.  For these reasons, disclosure of this information is prohibited by statute and has

been properly determined to be exempt from disclosure pursuant to Exemption 3 of the FOIA.

Id.

### 2.    Items 2-4 of Plaintiff's Request Do Not Fall Within the Agency's Purview.

33.    As it concerns items two-four of his request, in which plaintiff requested a short and plain

statement pertaining to the existence of brainwave technology, whether the system instruction

was disseminated at Falls Church, VA, and whether the detector chip was implanted in the

temporal bone area, these items do not fall within the agency's purview.  Siers Decl. ¶ 24.

34.    As described supra, NSA has three functions: (1) to collect, process, and disseminate

signals intelligence information for national foreign intelligence purposes; (2) to conduct

information security activities; and (3) to conduct operations security training for the United

States Government.  Id.

35.     Because items 2-4 do not fall within NSA's functions, a search for records would not

have been productive, and the FOIA does not require the agency to respond to such a request.  Id.

The FOIA only concerns requests for agency records – it does not compel a Federal agency to

create a record or answer substantive questions.  Id.; see also 5 U.S.C. § 552(a)(3)(A), (f)(2).  For

these reasons, the agency properly informed plaintiff that items 2-4 of his request did not fall

within the purview of NSA and that a search for records would not be productive.  Siers Decl. ¶

24.

**II.     Plaintiff's Freedom of Information ("FOIA") Request Submitted to the Federal
        Bureau of Investigation ("FBI")**.

36.     Plaintiff submitted FOIA requests to the FBI's Boston Field Office ("BFO"), the FBI's

headquarters ("FBIHQ") and the Jacksonville Field Office ("JFO").  Declaration of David M.

Hardy ("Hardy Decl.") ¶ 4.

        **A.     Plaintiff's Request to the BFO.**

37.     By letter dated September 5, 2002, plaintiff submitted a FOIA request to the FBI's BFO

 in which he requested "a copy of any records about [himself] . . . ."  Hardy Decl., Ex. A (Letter

dated September 5, 2002).  Plaintiff specifically requested "a copy of personnel information form

that I filled out that morning and special agents [sic] name who interviewed me.  Also any other

information in your file pertaining to me or any other agency that was contacted."  Id.  Plaintiff

further indicated that he had the following contacts with the BFO – "on 8-2-00 filled out a

personnel information form and had a short interview with an agent."  Id.

38.     By letter dated September 26, 2002, the BFO released one document consisting of two

pages responsive to plaintiff's request.  Hardy Decl., Ex. B (Letter dated September 26, 2002).

Plaintiff was informed that certain information had been redacted pursuant to Privacy Act

Exemption j(2) and FOIA Exemption 7(C).  Id.  Plaintiff was advised that he could submit an

appeal to the Department of Justice Office of Information and Privacy ("DOJ OIP").  Id.

39.     By letter dated October 2, 2002, plaintiff filed an administrative appeal of the FBI

BFO's response.  Hardy Decl., Ex. C (Letter dated October 2, 2002).  Plaintiff indicated that he

had sought the "agents [sic] full name" and that he wanted "information as to what agencies were

contacted."  Id.  Included with plaintiff's appeal was a copy of his September 5, 2002 request as

well as an article entitled "FBI uses Holocaust to teach new agents."  Id.

40.     By letter dated November 5, 2002, DOJ OIP acknowledged receipt of plaintiff's appeal

and advised him that his appeal was assigned number 03-0136.  Hardy Decl. ¶ 9; Hardy Decl. Ex.

D (Letter dated November 5, 2002).

41.     By letter dated January 31, 2003, DOJ OIP advised plaintiff that it was affirming the FBI

BFO's decision to withhold information pursuant to FOIA Exemption 7(C).  Hardy Decl. ¶ 10;

Hardy Decl., Ex. E (Letter dated January 31, 2003).  Specifically, the DOJ OIP affirmed the

decision to withhold the name of the FBI special agent who met with plaintiff at the BFO and the

name of a third party not of investigative interest to the FBI.  Hardy Decl., Ex. E.

**B.     Plaintiff's Request to FBIHQ.**

42.     By letter dated August 31, 2006, plaintiff submitted a letter to the FBIHQ seeking "the

release of all records pertaining to me, John E. Moore on the FBI database."  Hardy Decl., Ex. F

(Letter dated August 31, 2006).  Plaintiff requested a waiver of fees and indicated that the

information he sought was for his "own personal use."  Id.

43.    By letter dated September 25, 2006, FBIHQ acknowledged receipt of plaintiff's request. Hardy Decl., Ex. G (Letter dated September 25, 2006).

44.    By letter dated September 29, 2006, the FBI informed plaintiff that a search of the FBI's Central Records System ("CRS") at FBIHQ located no records responsive to plaintiff's request. Hardy Decl. ¶ 14; Hardy Decl. Ex. H (Letter dated September 29, 2006).  Plaintiff was informed that he could appeal the "no record" response by writing to the DOJ OIP within sixty days.  Id.

45.    On September 14, 2007, the FBI contacted DOJ OIP, which telephonically confirmed that its office had no record of having received an appeal from plaintiff in connection with his FBIHQ request.  Hardy Decl. ¶ 16.

### C.    Plaintiff's Request to JFO.

46.    According to the information available in the FBI's FOIPA Document Processing System ("FDPS"), which is the FBI's repository for records relating to FOIA/Privacy Act requests, plaintiff submitted a FOIA/Privacy Act request to the JFO.  Hardy Decl. ¶ 17.

47.    Although there is no record of when plaintiff's request was received, or the date of request, the FBI has determined that a case was opened in FDPS on February 3, 2003, and the FBI assigned FOIPA number 972947 to this request.  Id.

48.    FDPS information further indicates that the FBI advised plaintiff that no records responsive to his request were located at the JFO.  Id.  There are no exhibits available to document this request because the file containing all documents related to the request was destroyed on April 15, 2007, pursuant to JFO's routine record destruction.  Id.

49.    Plaintiff has not appealed the JFO's no records finding.  Id. ¶ 44.

14

**D.**    **The FBI's Central Records System.**

50.    The Central Records System ("CRS") enables the FBI to maintain information which it

has acquired in the course of fulfilling its mandated law enforcement responsibilities.  Id. ¶ 20.

The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and

other files compiled for law enforcement purposes.  Id.  CRS is organized into a numerical

sequence of files, called FBI "classifications," which are broken down according to subject

matter.  Id.  The subject matter of a file may correspond to an individual, organization, company,

publication, activity, or foreign intelligence matter (or program).  Id.

51.    Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent

to specific field offices of the FBI are maintained in those field offices.  Id.  While the CRS is

primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that

are potentially responsive to FOIA/Privacy Act requests.  Id.  The mechanism that the FBI uses to

search the CRS is the Automated Case Support System ("ACS").  Id.

52.    On or about October 16, 1995, the ACS system was implemented for all Field Offices,

Legal Attaches ("Legats"), and the FBIHQ in order to consolidate portions of the CRS that were

previously automated.  Id. ¶ 21.  ACS can be described as an internal computerized subsystem of

the CRS.  Id.

53.    Because the CRS cannot electronically query the case files for data, such as an

individual's name or social security number, the required information is duplicated and moved to

the ACS so that it can be searched.  Id.  More than 105 million records from the CRS were

converted from automated systems previously used by the FBI.  Id.  Automation did not change

the CRS; instead automation has facilitated more economic and expeditious access to records

maintained in the CRS.  Id.

54.     The retrieval of data from the CRS is made possible through the ACS using General

Indices, which are arranged in alphabetical order.  Id. ¶ 22.  The entries in the General Indices fall

into two categories:

> (a)     A "main" entry or "main" file carries the name corresponding with a subject of a
> file contained in the CRS.

> (b)     A "reference" entry, sometimes called a "cross-reference" is generally only a mere
> mention or reference to an individual, organization or other subject matter,
> contained in a document located in another "main" file on a different subject
> matter.

Id.

55.     Searches made in the General Indices to locate records concerning a particular subject,

such as John E. Moore, are made by searching the subject requested in the index.  Id. ¶ 23.

56.     The ACS consists of three integrated, yet separately functional, automated applications

that support case management functions for all FBI investigative and administrative cases:

> (a)     Investigative Case Management ("ICM") provides the ability to open, assign, and
> close investigative and administrative cases as well as set, assign, and track leads.
> Id. ¶ 24.  The Office of Origin ("OO"), which sets leads for itself and other field
> offices, as needed, opens a case.  Id.  The filed offices that receive leads from the
> OO are referred to as Lead Offices ("LOs").  Id.  When a case is opened, it is
> assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ,
> as well as all FBI field offices and Legats that are conducting or assisting in an
> investigation.  Id.  Using the fictitious file number "12-HQ-1234" as an example,
> an explanation of the UCFN is as follows: "12" indicates the classification for the
> specific type of investigation; "HQ" is the abbreviated form used for the OO of
> the investigation; and "1234" denotes the individual case file for the particular
> investigation.  Id.

> (b)     Electronic Case File ("ECF") serves as the central electronic repository for the
> FBI's official text-based documents.  Id.  ECF supports the universal serial
> concept in that only the creator of a document serializes it into a file.  Id.  This
> provides a single source entry of serials into the computerized ECF system.  Id.
> All original serials are maintained in the OO case file.  Id.

(c)    Universal Index ("UNI") continues the universal concept of ACS by providing a complete subject/case index to all investigative and administrative cases.  Id.  Only the OO is required to index; however, the LOs may index additional information as needed.  Id.  UNI, an index of approximately 99.6 million records, functions to index names to cases and to search names and cases for use in FBI investigations.  Id.  Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, social security number, address, and/or date of event.  Id.

57.    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – and on occasion, support employees – assigned to work on an investigation, the Supervisory SA ("SSA") in the field office conducting an investigation, and the SSA at FBIHQ.  Id. ¶ 25.

58.    The FBI does not index every name in its files; rather it indexes only that information considered to be pertinent or relevant or essential for future retrieval.  Id.  Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved.  Id.  The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes.  Id.  Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., John E. Moore.  Id.

E.    **Searches for Records Responsive to Plaintiff's Requests.**

1.    **The FBI BFO's Search.**

59.    In response to plaintiff's request to the BFO, the FBI initiated a search of its BFO general indices to identify all potentially responsive files.  Id. ¶ 26.  A search was conducted by using the name, "Moore, John Edmond," which would cover a phonetic breakdown of the first, middle and

last names.  Id.  For example, the search would locate records using the phonetic sounds of

"Moore, John Edmond," "Moore, John E.," "Moore, John," "Moore, J. Edmond," "Moore,

Edmond," and "Moore, J.E."  Id.  The BFO also used plaintiff's date of birth and social security

number to facilitate the identification of responsive records.  Id.  This search located two pages of

responsive records in one investigatory file at the BFO.  Id.

60.     The FBI has subsequently conducted a second search of the CRS for BFO files to ensure

the accuracy of its original response using the same search terms described above.  Id. ¶ 27.  An

additional possibly responsive document was revealed in this search.  Id.  However, no further

corroboration could be established and a responsiveness determination made because the file

containing the document was destroyed on January 18, 2007, pursuant to BFO's routine record

destruction policies.  Id.

61.     Due to plaintiff's date of birth, Manual Indices were also checked at the BFO for records

indexed to plaintiff's name.  Id.  These searches failed to locate any additional records responsive

to plaintiff's request.  Id.

62.     All places at the BFO reasonably likely to contain responsive documents were searched,

but no additional records were located.  Id. ¶ 28.

### F.      Withholding of Information by BFO Pursuant to FOIA Exemptions.

63.     The two documents located were processed to achieve maximum disclosure consistent

with the provisions of the FOIA.  Id. ¶ 29.  Every effort was made to provide plaintiff with all

material in the public domain and with all reasonably segregable portions of releaseable material.

Id.  Copies of the two pages released to plaintiff are attached as Exhibit I.

64.     The FBI's grounds for withholding information contained on the two pages of responsive

records were: (j)(2) of the Privacy Act; 5 U.S.C. § 552a(j)(2) and FOIA Exemptions 6 and 7(C),

5 U.S.C. §§ 552(b)(6), (b)(7)(C).  Id. ¶ 29.  Upon further consideration and analysis, the FBI

decided to release some information that had been previously withheld under FOIA Exemption

7(C).  Id.

### 1.    Privacy Act Exemption (j)(2).

65.    Subsection (j)(2) of the Privacy Act exempts from mandatory disclosure systems of

records "maintained by an agency or component thereof which performs as its principal function

any activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

control or reduce crime or to apprehend criminals . . . ."  5 U.S.C. § 552a(j)(2).

66.    The investigatory records at issue concern a potential criminal investigation.  Hardy Decl.

¶ 31.  Accordingly, the documents contained in this file are exempt from disclosure under the

Privacy Act in conjunction with 28 C.F.R. § 16.93.  Id.  Although access to these documents was

denied under the Privacy Act, they were processed under the access provisions of the FOIA to

ensure maximum disclosure.  Id.

### 2.    FOIA Exemption 6.

67.    5 U.S.C. § 552(b)(6) exempts from disclosure "all information in government records

about individuals in personnel and medical files and similar files when the disclosure of such

information would constitute a clearly unwarranted invasion of personal privacy."

68.    In asserting this exemption, each piece of information was scrutinized to determine the

nature and strength of the privacy interest of any individual whose name and/or identifying

information appears in the two pages of records at issue.  Hardy Decl. ¶ 33.

69.    In withholding this information, the individual's privacy interest was balanced against the

public interest in disclosure.  Id.  Public interest information was determined to be information

that would shed light on the FBI's performance of its statutory duties.  Id.  In each instance where

information was withheld, it was determined that the individual's privacy rights outweighed the

public interest.  Id.

70.    Exemption 6 is asserted in conjunction with Exemption 7(C) to protect the name of one

FBI SA responsible for conducting the interview recorded in the records responsive to plaintiff's

request to the BFO and to protect the name of one FBI professional support employee assigned to

handle tasks relating to the interview.  Id. ¶ 34.

71.    Exemption 6 has been cited to protect the name of the FBI SA responsible for conducting

the interview because his assignment to investigations is not by choice and publicity regarding

his involvement in a particular investigation may seriously hamper his effectiveness in

conducting future investigations.  Id. ¶ 35.

72.    The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary,

unofficial questioning as to the conduct of this interview or other investigations, whether or not

they are currently employed by the FBI.  Id.  FBI agents conduct official inquiries into violations

of various criminal statutes and in national security cases.  Id.  They come into contact with all

strata of society.  Id.  They conduct searches and make arrests, both of which constitute

reasonable, but nonetheless serious intrusions, into people's lives.  Id.  Many of these people

carry grudges which last for years and use any excuse to harass the agent they deem responsible

for these intrusions.  Id.  The publicity associated with the release of an FBI SA's identity in

connection with a particular investigation, such as the interview of plaintiff, could rekindle

animosity toward the agent.  Id.  There is no public interest to be served through the release of

this information.  <u>Id.</u>

73.    The name and telephone number of one FBI professional support employee have also been withheld pursuant to Exemption 6.  <u>Id.</u> ¶ 36.  This employee was assigned to handle tasks relating to the official interview of plaintiff.  <u>Id.</u>  The employee was, and possibly remains, in a position of having access to information regarding official law enforcement investigations and therefore could become a target of harassing inquiries for unauthorized access to investigations if his/her identity was released.  <u>Id.</u>  Furthermore, there is no public interest to be served by releasing the identity of this individual.  <u>Id.</u>

**3.    FOIA Exemption 7(C).**

74.    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.  5 U.S.C. § 552(b)(7).  In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, by revealing the identity of an FBI SA and an FBI professional support employee.  Hardy Decl. ¶ 37.

75.    To invoke Exemption 7, an agency must demonstrate that the records or information at issue were compiled for law enforcement purposes.  <u>Id.</u> ¶ 38.  Law enforcement agencies, such as the FBI, must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the enforcement duty of the agency.  <u>Id.</u>  In this case, the documents pertain to a potential civil rights investigation and there is no doubt that this falls within the law enforcement duties of the FBI.  <u>Id.</u>

76    Exemption 7(C) exempts from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ."  5 U.S.C. § 552(b)(7)(C).

77.     When withholding information pursuant to Exemption 7(C) the agency is required to balance the privacy interests of the individuals mentioned in these two pages of records against any public interest in disclosure.  Hardy Decl. ¶ 40.  In asserting Exemption 7(C), each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying data appears in the documents at issue.  Id.

78.     In withholding this information, the individual's privacy interest was balanced against the public's interest in disclosure.  Id.  In each instance where information was withheld, it was determined that individual privacy interests outweighed any public interest.  Id.  The public interest in disclosure of the information is determined by whether the information in question would inform the plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its internal operations and investigations.  Id.  It was determined that the privacy interests are as strong now as when the records were created.  Id.  To reveal the names in the context of these records could reasonably be expected to cause embarrassment, humiliation, harassment, unsolicited inquiries, and would not add to the public's understanding of the inner workings of the government.  Id.  In each instance where information was withheld from these two pages of records, it was determined that the individual's privacy rights outweighed the public interest in disclosure.  Id.

79.     Exemption 7(C) is asserted in conjunction with Exemption 6 to protect the name of one

FBI SA responsible for conducting the interview recorded in the two pages of records responsive to plaintiff's request to the BFO and one FBI professional support employee assigned to handle tasks relating to the interview.  Id. ¶ 41.

80.    The name of one FBI SA was withheld pursuant to Exemption 7(C) because his assignment to investigations is not by choice and publicity regarding his involvement in a particular investigation may seriously hamper his effectiveness in conducting future investigations.  Id. ¶ 42.  The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI.  Id.

81.    FBI agents conduct official inquiries into violations of various criminal statutes and in national security cases.  Id.  They come into contact with all strata of society.  Id.  They conduct searches and make arrests, both of which constitute reasonable, albeit serious intrusions into people's lives.  Id.  Many of these people carry grudges which last for years, and seek any excuse to harass the agent they deem responsible for these intrusions.  Id.  The publicity associated with the release of an FBI Agent's identity in connection with a particular investigation, such as the FBI's interview of plaintiff, could rekindle animosity towards that agent and there is no public interest to be served by release of this information.  Id.

82.    The name and telephone number of one FBI professional support employee have also been withheld pursuant to Exemption 7(C).  Id. ¶ 43.  This employee was assigned to handle tasks relating to the official interview reported by plaintiff.  Id.  The employee was, and possibly still is, in a position of having access to information regarding official law enforcement investigations and therefore could become a target of harassing inquiries for unauthorized access

to investigations if his/her identity was released.  Id.  Furthermore, there was no public interest to

be served by releasing the identity of this individual.  Id.

Respectfully submitted,

    s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


    s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR THE FEDERAL DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN E. MOORE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 07-0107 |
| | * | |
| NATIONAL SECURITY | * | |
| AGENCY, | * | |
| | * | |
| Defendant. | * | |
| | ***** | |

## DECLARATION OF RHEA D. SIERS

I, RHEA D. SIERS, hereby declare and state:

1. I am the current Deputy Associate Director for Policy and Records for the National Security Agency ("NSA" or "the Agency"). I have served with NSA for 25 years, and, prior to my current assignment, I held various leadership positions throughout the Agency. As the Deputy Associate Director for Policy and Records, I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a, for NSA records, and I am a TOP SECRET classification authority, pursuant to section 1.3 of Executive Order 12958, as amended 25 March 2003. It is also my responsibility to assert the FOIA/PA exemptions in the course of litigation. Through the exercise of my official duties as Deputy Associate Director for Policy and Records, I have become familiar with the current litigation arising out of requests for records filed by Plaintiff, John E. Moore.

2. The purpose of this declaration is to describe NSA's search for responsive records and the responses that NSA has provided to Plaintiff's FOIA/PA request. Specifically, in response to

Plaintiff's request for all information pertaining to him, NSA responded that it was unable to locate any records indicating that Plaintiff had been affiliated with the Agency and that the Agency could neither confirm nor deny whether the Agency possessed any other records relating to this portion of Plaintiff's request. Concerning the remaining portions of Plaintiff's request, the Agency informed Plaintiff that the information he requested did not fall within the purview of NSA and that a search for records responsive to this portion of Plaintiff's request would not be productive. In order to provide the necessary context for the discussion that follows, I will describe NSA's origin and mission.

## I. <u>ORIGIN AND MISSION OF NSA</u>

3. NSA was established by Presidential Directive in October 1952 as a separately organized agency within the Department of Defense. <u>See</u> Executive Order 12333, section 1.12(b). NSA's cryptologic mission has three functions: to collect, process, and disseminate SIGINT information for national foreign intelligence purposes; to conduct information security activities; and to conduct operations security training for the U.S. Government. To accomplish its SIGINT function, NSA has developed a sophisticated, worldwide SIGINT collection network that exploits foreign communications to obtain intelligence necessary to the national defense, national security, or the conduct of foreign affairs.

4. As mentioned above, Signals Intelligence is one of NSA's primary functions. NSA's SIGINT mission is to obtain information from foreign electromagnetic signals and to provide, frequently on a rapid response basis, reports derived from such information or data to national policy makers and the intelligence community of the U.S. Government. A primary SIGINT mission of NSA is to intercept communications in order to obtain foreign intelligence information necessary to the national defense, national security, or the conduct of the foreign

2

affairs of the United States. The SIGINT collection mission of NSA provides national policy makers and the intelligence community with highly reliable foreign intelligence information.

5. The Agency's SIGINT role has been enhanced by superior intelligence sources and methods, which enable it to keep pace with challenging developments in virtually every area of technology. In the course of fulfilling these missions, NSA obtains information and reports it to customers within the U.S. Government. From a SIGINT mission standpoint, some of the information NSA gleans may not be significant; however, it is frequently interwoven with information that reveals information concerning NSA's activities.

6. There are two primary reasons for gathering and analyzing intelligence information. The first, and most important, is to gain the information required to direct U.S. resources as necessary to counter external threats. The second reason is to obtain the information necessary to direct foreign policy of the United States. Information produced by SIGINT is relevant to a wide range of important issues, including military order of battle, threat warnings and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics trafficking. This information is often critical to the formulation of U.S. foreign policy and the support of U.S. military operations around the world. Moreover, intelligence produced by NSA is often unobtainable by other means.

7. NSA has developed a sophisticated worldwide SIGINT collection network that acquires, among other things, foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a substantial cost and untold human effort. It relies on sophisticated collection and processing technology.

8. NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Further, SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential of revealing the intelligence collection techniques that are applied against targets around the world. Once alerted, SIGINT targets can easily frustrate SIGINT collection.

9. Information obtained from intercepted foreign communications is called communications intelligence ("COMINT"). NSA's COMINT efforts constitute only part of the functions and activities of the Agency. A fundamental tenet of the COMINT process is that the identity of specific communications (commonly referred to as targets), the degree of success in exploiting these targets, the vulnerability of particular foreign communications, and the extent of any cryptologic successes are all matters that must be maintained in strictest secrecy, because of the fragility of the ability to exploit foreign communications. Disclosure of the identity of the targets, the degree of success or weakness in exploiting those targets, the vulnerability of particular foreign communications, and the extent of any cryptologic success would encourage countermeasures by the targets of NSA's COMINT efforts. If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of the foreign power's signals. If a source becomes unavailable, the military, national policymakers, and the intelligence community must operate without the information the signals provided. Such losses are extremely harmful to the national security of the United States.

4

## II. **PROCESSING OF PLAINTIFF'S FOIA REQUEST**

10.  Plaintiff filed a FOIA/PA request dated 31 August 2006, which was received by NSA's Office of Policy on 5 September 2006.  See Attachment A.  Plaintiff's written request sought the following items: (1) information pertaining to himself within NSA databases; (2) a "short statement pertaining to the existence of brainwave technology" in 1996; (3) whether "the system instruction [was] disseminated at Falls Church[,] VA" in 1996; and (4) whether "the system detector chip [was] implanted in the temporal bone area."

11.  By letter dated 15 September 2006, NSA responded to Plaintiff's request.  See Attachment B.  Concerning item 1 of Plaintiff's request, NSA first informed him that it conducted a thorough search of its comprehensive filing systems to include applicant, security, personnel, and training files, but that because Plaintiff had never been affiliated with the Agency, it could not, after a thorough search, locate any responsive records within those filing systems. NSA also informed Plaintiff that the President of the United States had "'authorized the National Security Agency, consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations.'" The Agency informed Plaintiff that it could neither confirm nor deny whether records relating to Plaintiff under this program exist pursuant to the first and third exemptions of the FOIA.  The Agency then informed Plaintiff of his appeal rights.  Concerning items 2-4 of Plaintiff's request, NSA informed him of the Agency's mission, advised him that the information he had requested did not fall within the purview of the Agency, and informed him that a search for responsive records would not be productive.

12.  By letter dated 25 September 2006, Plaintiff filed an agency appeal with NSA.  See Attachment C.  Within his appeal request, Plaintiff stated that the Agency had "satisfactorily

answered" the first and third items of his request. Plaintiff, however, requested additional information concerning items 2 and 4 of his request. The Agency treated his request as an appeal of the Agency's denial of items 2 and 4 of Plaintiff's original request, and John C. Ingliss, the Agency's Appeals Authority, after reviewing Plaintiff's original request, the Agency's response to him, and Plaintiff's letter of appeal, again found that the information Plaintiff had requested did not fall within NSA's purview and that a search for records responsive to Plaintiff's request would not be productive. See Attachment D.

### III. ITEM 1 OF PLAINTIFF'S FOIA REQUEST

13. Item 1 of Plaintiff's request sought any and all information pertaining to Plaintiff that the Agency may have in its possession.[1] In response to Plaintiff's request, NSA conducted a search for responsive records using Plaintiff's name as the search term. The Agency searched all of its databases that would contain information on current or former NSA affiliates (i.e., employees, applicants, military members, contractors, and visitors), but no responsive records were located.

14. Because Plaintiff requested all records this Agency maintains on him, NSA also responded as if Plaintiff had asked for records on the surveillance, targeting, and/or domestic collection of him by NSA. In light of his request, I have submitted this declaration to explain to the Court that NSA cannot acknowledge the existence or non-existence of information concerning the targets of its surveillance efforts, as any such response would disclose information that is currently and properly classified in accordance with Executive Order 12958, as amended. Further, the release of any confirmation or denial that a particular individual, organization, etc. has been or is a target is precluded by three statutes – section 6 of the National

---

[1] Notably, Plaintiff did not administratively appeal the Agency's response to items 1 and 3 of his written request. See Attachment 3 (stating that Plaintiff found "that [the Agency] satisfactorily answered [his] question[s] one and three").

Security Agency Act of 1959; 18 U.S.C. § 798; and Section 102A(i)(1) of the Intelligence

Reform and Terrorism Prevention Act of 2004. Accordingly, if this Court considers Plaintiff's

request to encompass a request for information regarding whether he was a target of NSA's

surveillance efforts, then the existence or non-existence of this information is exempt from

disclosure pursuant to Exemptions 1 and 3 of the FOIA.

**Exemption 1**

15. Exemption 1 of the FOIA protects the release of matters that are specifically

authorized under criteria established by an Executive Order to be kept secret in the interest of the

national defense or foreign policy and are in fact properly classified pursuant to such Executive

Order. See 5 U.S.C. § 552(b)(1). The current Executive Order, which establishes such criteria,

is Executive Order 12958, as amended 25 March 2003.

16. Section 1.4 of Executive Order 12958 provides that information may not be

considered for classification unless it falls within one (or more) of seven specifically enumerated

categories of information. The information at issue here – confirming the existence or non-

existence that Plaintiff was a target of NSA's surveillance efforts – pertains to categories of

classified information found in Section 1.4(c), intelligence activities (including special

activities), intelligence sources and methods, or cryptology; and Section 1.4(g), vulnerabilities or

capabilities of systems, installations, infrastructures, projects, plans, or protection services

relating to the national security, including defenses against transnational terrorism.

17. Additionally, confirming the existence or non-existence of responsive records would

disclose information that is currently and properly classified TOP SECRET pursuant to Section

1.2(1) of Executive Order 12958, as amended, because such a positive or negative response

could reasonably be expected to cause exceptionally grave damage to the national security. Confirmation by NSA that a person's activities are not of a foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. Our adversaries would have a roadmap, instructing them which communications modes and personnel remain safe or are successfully defeating NSA's capabilities. For example, if NSA were to admit publicly in response to an information request that no information about Persons X, Y, and Z exist, but in response to a separate information request about Person T state only that no response could be made, this would give rise to the inference that Person T is a target of NSA's surveillance efforts. These inferences would disclose the targets and capabilities (*i.e.*, NSA's sources and methods) of NSA's SIGINT activities and functions and inform our adversaries of the degree to which NSA is aware of some of their operatives or is able to successfully exploit particular communications. Therefore, NSA cannot respond to each FOIA request in isolation, but must acknowledge that our adversaries will examine all released information together. This compilation of information, if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security of the United States. Therefore, the fact of the existence or nonexistence of the information requested in item 1 is a currently and properly classified matter in accordance with Executive Order 12958, as amended, and thus item 1 of Plaintiff's request was properly denied pursuant to Exemption 1 of the FOIA.

**Exemption 3**

18. The fact of the existence or nonexistence of information requested by Plaintiff in item 1 is also exempted from disclosure pursuant to Exemption 3 of the FOIA. Section 552(b)(3) of the FOIA provides that the FOIA does not require the release of matters that are specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matter to be withheld. Review of the application of Exemption 3 statutes consists solely of determining that the statute relied upon qualifies as an Exemption 3 statute and that the information withheld falls within the scope of the statute.

19. The information at issue here falls squarely within the scope of several statutes. Information about NSA's SIGINT efforts directly relates to the Agency's core functions and activities. Congress has passed these statutes to protect the fragile nature of NSA's SIGINT efforts, including, but not limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses, and exploitation techniques. These statutes recognize the vulnerability of SIGINT to countermeasures by targets and the significant of the loss of valuable foreign intelligence information to national policymakers and the intelligence community.

20. The first of these statutes is a statutory privilege unique to NSA. As set forth in Section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 402 note), "**[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof. . . .**" (emphasis added). Congress, in enacting the language in this statute, decided that disclosure of any information relating to NSA

9

activities is potentially harmful. *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979). Federal courts have held that the protection provided by this statutory privilege is, by its very terms, absolute. See, e.g., *Linder v. NSA*, 94 F.3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. See *Hayden*, 608 F.2d at 1390. Further, while in this case the harm would be very serious, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but need only show that the information relates to the organization or any function of the Agency. *Id.* To invoke this privilege, NSA must demonstrate only that the information sought to be protected falls within the scope of Section 6. *Id.* NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified. *Id.*

21. The second applicable statute is 18 U.S.C. § 798. This statute prohibits the unauthorized disclosure of classified information (i) concerning the communications intelligence activities of the United States or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government. The term "communications intelligence," as defined by 18 U.S.C. § 798, means the procedures and methods used in the interception of communications and obtaining of information from such communications by other than the intended recipients. This statute clearly identifies matters to be withheld from the public and refers to particular types of matters to be withheld. See 5 U.S.C. § 552(b)(3). Thus, this statute qualifies as an Exemption 3 statute under the FOIA. See *Florida Immigrant Advocacy Ctr. v. NSA*, 380 F. Supp.2d 1332, 1340 (S.D. Fla. 2005) ("Other exempting statutes include . . . 18 U.S.C. § 798."); *Winter v. NSA*, 569 F. Supp. 545 (S.D. Cal. 1983) (finding that 18 U.S.C. § 798 is a "statute[] within Exemption 3").

22. The third applicable statute is Section 102A(i)(1) of the Intelligence Reform and Terrorist Prevent Act of 2004, 50 U.S.C. § 403-1(i)(1), which states "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." NSA, as a member of the intelligence community, must also protect intelligence sources and methods. Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence sources and methods is absolute. See *Central Intelligence Agency v. Sims*, 471 U.S. 159 (1985); *People for the American Way v. NSA*, 462 F. Supp. 2d 21, 31 n.8 (D.D.C. 2006). Whether the sources and methods at issue are classified is irrelevant for purposes of the protection afforded by 50 U.S.C. § 403-1(i)(1). *Id.*

23. Acknowledging the existence or nonexistence of the information Plaintiff requests in item 1 would reveal NSA's organization, functions, and activities by revealing the success or failure of NSA's activities. Revelation of this information is prohibited pursuant to Section 6 of Public Law 86-36. It would also reveal the limitations of NSA's SIGINT capabilities, the revelation of which is prohibited by 18 U.S.C. § 798. Finally, release of this information would reveal the intelligence sources and methods that NSA uses to obtain this information. Therefore, revelation of this information is prohibited pursuant to Section 102A(i)(1) of the Intelligence Reform and Terrorist Prevent Act of 2004. For these reasons, disclosure of this information is prohibited by statute and has been properly determined to be exempt from disclosure under Exemption 3 of the FOIA.

## IV.  ITEMS 2-4 OF PLAINTIFF'S FOIA REQUEST

24. Within items 2-4 of his request, Plaintiff requested the following: a "short statement pertaining to the existence of brainwave technology" in 1996; whether "the system instruction [was] disseminated at Falls Church[,] VA" in 1996; and whether "the system detector chip [was]

11

implanted in the temporal bone area." These items do not fall within the purview of this Agency. As described above at Section I in greater detail, NSA has three functions: to collect, process, and disseminate signals intelligence information for national foreign intelligence purposes; to conduct information security activities; and to conduct operations security training for the U.S. Government. Because items 2-4 do not fall within NSA's functions, a search for records would not have been productive, and the FOIA does not require the Agency to respond to such a request. The FOIA only concerns requests for agency records – it does not compel a Federal agency to create a record or answer substantive questions. See 5 U.S.C. § 552(a)(3)(A), (f)(2); see also *Department of Justice v. Tax Analysts*, 492 U.S. 136, 144-46 (1989) (holding that documents are only considered "agency records" if they are (1) created or obtained by an agency and (2) within the agency's control); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("[P]ossession or control is a prerequisite to FOIA disclosure duties. . . . The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."). For all these reasons, the Agency properly informed Plaintiff that items 2-4 that he requested did not fall within the purview of NSA and that a search for records responsive to this portion of Plaintiff's request would not be productive.

25. I declare under the penalty of perjury that the facts set forth above are true and correct.

Executed this __12th__ day of October, 2007, pursuant to 28 U.S.C. § 1746.

_Rhea D Siers_

RHEA D. SIERS
Deputy Associate Director for Policy and Records
National Security Agency

12

**Attachment A**

a|5|06

John E. Moore
9 Pleasant View Cir.
Daytona Beach, FL.
32118-5511

August 31 2006

National Security Agency
Attn: FOIA/Privacy Act Section
9800 Savage Road STE 6248
Ft. George G. Meade, MD.
20755-6248

Dear Sir or Madam:

This is a request under the Freedom of Information Act (5 U.S.C. 552). I request that
a copy of the following documents and noted information that I am requesting be
made available to me.

1. I am requesting information pertaining to myself John E. Moore that is or may be
   on your data base.
   Note: See personal background sheet that is included.

2. I am requesting a short statement pertaining to the existence of brainwave
   technology? (SigInt, ComINT)  I am only interested in a time frame of nineteen
   ninety six.

3. Was the system instruction disseminated at Falls Church VA. within the time
   frame of the previously noted date.

4. Was the system detector chip implanted in the temporal bone area.

I request a waiver of fees for this request. This information is for my own personal use. If I am denied a waiver of fees, please inform me of your decision and cost of the information if any.

As the FOIA requires, I will look forward to your response within twenty (20) working days.

Sincerely,

John E. Moore

8/31/06



JENNIFER LYNN RULAND
Notary Public, State of Florida
Expires March 09, 2007

Pg.2

# Background Information

John E. Moore
9 Pleasant View Cir.
Daytona Beach, Fl.
32118-5511

Phone ▮▮▮▮▮▮▮▮

S/N ▮▮▮▮▮▮▮

Dob. ▮▮▮▮▮

Present address;
9 Pleasant View Cir.
Daytona Beach, Fl.
32118-5511

Address prior to 07-01-01
136 Sand Pebble Cir.
Port Orange, Fl.
32119-3698

I certify that the above information is true and accurate.

John Edmond Moore

*John Edmond. Moore*

dtd. *08-31-06*

*8/31/06*

CHRISTEN LEWIS RULAND
Notary Public, State of Florida
My commission expires March 09, 2007
DD 191136

Pg. 3

**Attachment B**

FOIA Case: 51309
15 September 2006

Mr. John E. Moore
9 Pleasant View Circle
Daytona Beach, FL  32118-5511

Dear Mr. Moore:

This responds to your letter dated 31 August 2006, which was received by this office on 5 September 2006, requesting the following:

1. Information pertaining to you;
2. A short statement pertaining to the existence of brainwave technology (SigInt, ComINT);
3. Was the system instruction disseminated at Falls Church, VA.
4. Was the system detector chip implanted in the temporal bone area

Your letter has been assigned Case Number 51309.  Please refer to this case number when contacting us about your request.  Your request has been processed under the provisions of the Freedom of Information Act (FOIA) and Privacy Act (PA).  There are no assessable fees for this request, therefore, your request for a waiver of fees was not addressed.

In response to item #1 of your request, personnel management files are maintained on NSA/CSS affiliates.  Therefore, a search of our most comprehensive filing systems which include applicant, personnel, security, medical, and training was conducted pursuant to the Privacy Act.  Our records reflect that you have never been affiliated with this Agency; thus, no records were located in a search of those filing systems.

As you may be aware, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations."  The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens.  However, because of the classified nature of the National Security Agency's efforts to prevent and protect against terrorist attacks, we

FOIA Case: 51309

can neither confirm nor deny whether records relating to you under this program exist, or whether any specific technique or method or activity is employed in that effort. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended. Thus, your request is denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, your request is also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

As your request is being denied, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act/Privacy Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA/PA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD 20755-6248. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA/PA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

In response to items #2-4 of your request, the FOIA allows the public access to federal agency records, except to the extent that such records are protected from disclosure by one of nine exemptions. It does not compel government agencies to create a record or to answer substantive questions. The National Security Agency/Central Security Service (NSA/CSS) is the nation's cryptologic organization, and we have a twofold mission. Our Information Assurance mission is to provide solutions, products, and services to protect U.S. information infrastructures critical to national security interests. In response to requirements set at the highest levels of government, our Signals Intelligence mission is to collect, process, and disseminate intelligence information from foreign signals for national foreign intelligence and counterintelligence purposes and to support military operations.

FOIA Case:  51309

Therefore, the information you request does not fall within the purview of this Agency, and a search for records responsive to your request would not be productive.

We have enclosed a fact sheet describing NSA/CSS's mission, which we hope you will find useful and informative.

Sincerely,

LOUIS F. GILES
Director of Policy

Encl:
  a/s

**Attachment C**

10/2/06

John E. Moore
9 Pleasant View Cir.
Daytona Beach, FL.
32118-5511

September 25, 2006

NSA/CSS FOIA/PA
Appeal Authority (DC34)
National Security Agency
9800 Savage Road STE 6248
Fort George G. Meade, MD.
20755-6248

Subject: Appeal

Reference: FOIA Case: 51309

Dear Sir or Madam:

   Now my appeal request. I find that you have satisfactorily answered my question one
and three.

   In reference to questions two and four, is the NSA/CSS monitoring or in control of
the milli hertz frequency range? Which is in the Brainwave data spectrum.

   I am very interested in the use of torture procedures tying in with Brainwave
Technology, or to be more specific. EBL (Brain Link) I would like any information that
you could provide in the NSA/CSS use of this spectrum.

   One important note that I would like to point out, is that I am not a foreign national,
nor am I related to any terrorist organization. As you gave reference to in your letter of
response.

Also I am retired from the U.S. Government as a civilian employee and also was a Member of the U.S. Navy.

Thank you for all your help in providing me the information available under the FOIA that I requested.

Sincerely,

John E. Moore

John E. Moore

# Attachment D



NATIONAL SECURITY AGENCY
FORT GEORGE C. MEADE, MARYLAND 20755-6000

Case No. 51309/Appeal No. 3191
13 February 2007

Mr. John E. Moore
9 Pleasant View Circle
Daytona Beach, FL 32118-5511

Dear Mr. Moore:

This replies to your 25 September 2006 letter appealing the National Security Agency's (NSA) determination that item #2 and item #4 in your Freedom of Information Act (FOIA) request dated 31 August 2006 fail to fall within the purview of this Agency. Your original request, the Office of Policy's response to you, and your letter of appeal have been reviewed. Based on my review, I have determined that requests for records about brainwave technology and the implantation of chips in the human brain do not relate to NSA's two-fold mission, which was explained in the Director of Policy's letter dated 15 September 2006. Therefore, the information you request does not fall within the purview of this Agency, and a search for records responsive to your request would not be productive.

Further, in your appeal letter you also asked questions about human brain technology frequency ranges and the uses of brain technology for torture. Such information, as stated previously, is outside the purview of NSA's mission, and NSA is not required by FOIA to answer questions — its obligation is to release responsive records if not exempt. In your case, a search for responsive records would not be productive since you are seeking information that does not relate to NSA's mission.

As your appeal is denied, you are hereby advised of your right pursuant to 5 U.S.C. § 552(a)(4)(B) to seek judicial review of my decision in the United States District Court, in the district in which you reside, in which you have your principal place of business, in which the Agency records are situated (U.S. District Court of Maryland), or in the District of Columbia.

Sincerely,

JOHN C. INGLIS
Freedom of Information Act/Privacy Act
Appeals Authority

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN E. MOORE, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| GEORGE W. BUSH, et al., | ) |
| Defendants. | ) |

Civil Action No. 07-00107

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 211 employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment of the FOIA/Privacy Act requests of plaintiff John E. Moore for documents related to himself.

(4)    The purpose of this declaration is to provide the Court and plaintiff with an explanation of the FBI's search for records responsive to plaintiff's request to the FBI Boston Field Office ("BFO"), which resulted in the release of two pages of responsive records, and his requests to FBIHQ and the Jacksonville Field Office ("JFO"), for which the FBI located no records responsive to plaintiff's requests.  In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir.1973), this declaration will also provide the Court and plaintiff with a justification for the withholding of the name of one FBI Special Agent ("SA") and one FBI support employee, which have been withheld from disclosure pursuant to Privacy Act Exemption (j)(2), U.S.C. § 552a (j)(2), and FOIA Exemptions (b)(6) and (b)(7)(C), 5 U.S.C. § 552 (b)(6) and (b)(7)(C).

## CORRESPONDENCE RELATING TO PLAINTIFF'S REQUESTS

(5)     Plaintiff John E. Moore submitted FOIA/ Privacy Act requests to the BFO, JFO, and FBIHQ.

## BFO FOIA/PRIVACY ACT REQUEST

(6)     By letter dated September 5, 2002, plaintiff John E. Moore submitted a FOIA/Privacy Act request to the BFO for any records pertaining to himself. He specifically requested a copy of a "personnel information form that I filled out that morning and special agents [sic] name who interviewed me. Also any other agency that was contacted." **(See Exhibit A.)**

(7)     By letter dated September 26, 2002, the BFO released two (2) pages to the plaintiff. Plaintiff was advised that certain information was withheld pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption (b)(7)(C).[1] Plaintiff was advised that he could appeal any denials in the release to the Department of Justice Office of Information and Privacy ("DOJ OIP"). **(See Exhibit B.)**

(8)     By letter dated October 2, 2002, to DOJ OIP, plaintiff filed an administrative appeal of the FBI's response, stating that his request was not fulfilled. He specifically requested "the agents [sic] full name" and "information as to what agencies were contacted." **(See Exhibit C.)**

(9)     By letter dated November 5, 2002, DOJ OIP acknowledged the receipt of plaintiff's appeal and advised him that his appeal had been assigned appeal number 03-0136.

---

[1]As explained in this declaration, the FBI is also withholding these names under FOIA Exemption (b)(6).

(See Exhibit D.)

(10)    By letter dated January 31, 2003, DOJ OIP advised plaintiff of its decision to affirm the FBI's action on his request and further stated that if he was dissatisfied with this decision, he could seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). (See Exhibit E.)

(11)    Plaintiff filed the Complaint in the present lawsuit in the United States District Court for the District of Columbia on or about January 12, 2007.

## FBIHQ FOIA/PRIVACY ACT REQUEST

(12)    By letter dated August 31, 2006, plaintiff submitted a FOIA/Privacy Act request to FBIHQ for all records related to himself. (See Exhibit F.)

(13)    By letter dated September 25, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA/Privacy Act request, which had been assigned Freedom of Information and Privacy Acts ("FOIPA") number 1059107. (See Exhibit G.)

(14)    By letter dated September 29, 2006, the FBI advised plaintiff that a search of the automated indices to the Central Records System ("CRS") at FBIHQ located no records responsive to his request. Plaintiff was also advised that he could appeal the FBI's "no record" response by writing to the DOJ OIP within sixty days. (See Exhibit H.)

(15)    Plaintiff filed the Complaint in the present lawsuit in the United States District Court for the District of Columbia on or about January 12, 2007.

(16)    On September 14, 2007, the FBI contacted DOJ OIP, which telephonically confirmed that its office had no record of having received an appeal from plaintiff John E. Moore in connection with his FBIHQ request.

-4-

## JFO FOIA/PRIVACY ACT REQUEST

(17)     According to the information available in the FBI's FOIPA Document Processing System ("FDPS"), which is the FBI's repository for records regarding FOIA/Privacy Act requests, plaintiff submitted a FOIA/Privacy Act request to the JFO.  Although we do not have a record of when that request was received or the date of that request, we do know that a case was opened in FDPS on February 3, 2003, and the FBI assigned FOIPA request number 972947 to this request. The information in FDPS also indicates that the FBI advised plaintiff that no records responsive to his request were located at the JFO.  There are no exhibits available which document this request, because the file containing all documents related to the request was destroyed on April 15, 2007, pursuant to the routine record destruction policies at the JFO.

(18)     Plaintiff filed the Complaint in the present lawsuit in the United States District Court for the District of Columbia on or about January 12, 2007.

(19)     On September 14, 2007, the FBI contacted DOJ OIP, which telephonically confirmed that its office had no record of having received an appeal from plaintiff John E. Moore in connection with his FBIHQ request.

## **EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM**

(20)     The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter.  The subject matter of a file may correspond to an individual, organization, company, publication,

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices. While the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(21)    On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(22)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[2] The entries in the General Indices fall into two categories:

>    (a) A "main" entry -- A "main" entry, or "main" file, carries the
>    name corresponding with a subject of a file contained in the CRS.

---

[2]    The General Indices, which became fully automated on September 24, 1987, also include index cards which allow a manual search for records prior to that date.

(b) A "reference" entry --"Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(23)    Searches made in the General Indices to locate records concerning a particular subject, such as John E. Moore, are made by searching the subject requested in the index.

(24)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)  Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using the fictitious file number "12-HQ-1234" as an example, an explanation of the UCFN is as follows:  "12" indicates the classification for the specific type of investigation; "HQ" is the abbreviated form used for the OO of the investigation; and "1234" denotes the individual case file number for the particular investigation.

(b)  Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

-7-

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 99.6 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(25)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – and on occasion, support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., John E. Moore.

## SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

### BFO FOIA/ PRIVACY ACT REQUEST SEARCH

(26)    In response to plaintiff's request to the BFO, the FBI initiated a search of its BFO

-8-

general indices to identify all potentially responsive files. A search was conducted by using the name "Moore, John Edmond," which would cover a phonetic breakdown of the first, middle, and last names. For example, this search would locate records using the phonetic sounds of "Moore, John Edmond," "Moore, John E.," "Moore, John," "Moore, J. Edmond," "Moore, Edmond," and "Moore, J.E." The BFO also used plaintiff's date of birth and social security number to facilitate the identification of responsive records. This search located two pages of records responsive to plaintiff's request in one investigatory file at the BFO.

(27)     The FBI has subsequently conducted a second search of the CRS for BFO files to ensure the accuracy of its original response using the same search terms described above. An additional possibly responsive document was revealed in this search. However, no further corroboration could be established and a responsiveness determination made because the file containing the document was destroyed on January 18, 2007, pursuant to the routine record destruction policies at the BFO. Due to the plaintiff's date of birth, Manual Indices were also checked at the BFO for records indexed to plaintiff's name. These searches failed to locate any additional records responsive to plaintiff's request.

(28)     All places at the BFO reasonably likely to contain responsive documents were searched, but no additional records were found.

## JUSTIFICATION FOR REDACTIONS
## FOR RECORDS RESPONSIVE TO PLAINTIFF'S BFO REQUEST

(29)     The two documents were processed to achieve maximum disclosure consistent with provisions of the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releaseable material. Copies of the two pages released to plaintiff are attached as **Exhibit I**. The exemptions asserted by the FBI as

-9-

grounds for partially withholding the two pages of responsive records are (j)(2) of the Privacy Act, 5 U.S.C. § 552a (j)(2), and FOIA Exemption (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6), (b)(7)(C). Upon further consideration and analysis, the FBI decided to release information previously withheld pursuant to FOIA Exemption (b)(7)(C).

## PRIVACY ACT EXEMPTION (j)(2)

(30)    Subsection (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals..."

(31)    The investigatory records at issue concern a potential criminal investigation. Accordingly, the documents contained in this file are exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a (j)(2), in conjunction with 28 C.F.R. § 16.93 (2003). Although access to these documents was denied under the Privacy Act, they have been processed under the access provisions of the FOIA to achieve maximum disclosure.

## EXEMPTION (b)(6)

## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(32)    5 U.S.C. § 552(b)(6) exempts from disclosure "all information in government records about individuals in personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."

(33)    In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appears in the two pages of records at issue. In withholding this

-10-

information, the individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, public interest information was determined to be information which would shed light on the FBI's performance of its statutory duties. In each instance where information was withheld, it was determined that individual's privacy rights outweighed the public interest.

**(b)(6)**
**Names of FBI Special Agents and an FBI Professional Support Personnel**

(34)    Exemption (b)(6) is asserted in conjunction with (b)(7)(C) in these two pages of responsive records to protect the name of one FBI SA responsible for conducting the interview recorded in the records responsive to plaintiff's request to the BFO and one FBI professional support employee assigned to handle tasks relating to this interview.

(35)    Exemption (b)(6) has been cited to protect the name of the FBI SA responsible for conducting the interview. The name of one FBI SA was withheld since his assignment to investigations is not by choice, and publicity regarding his involvement in a particular investigation may seriously hamper his effectiveness in conducting future investigations. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this interview or other investigations, whether or not they are currently employed by the FBI. FBI agents conduct official inquiries into violations of various criminal statutes and in national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into people's lives. Many of these people carry grudges which last for years and use any excuse to harass the agent they deem responsible for these intrusions. The publicity associated with release of an FBI SA's identity in connection with a particular investigation, such

-11-

as the interview of the plaintiff, could rekindle animosity toward the agent. There is no public interest to be served through the release of this information.

(36)    The name and telephone number of one FBI professional support employee have also been withheld pursuant to Exemption (b)(6). This employee was assigned to handle tasks relating to the official interview of the plaintiff. The employee was, and possibly remains, in a position of having access to information regarding official law enforcement investigations and therefore could become a target of harassing inquiries for unauthorized access to investigations if his/her identity was released. Further, there is no public interest to be served by releasing the identity of this individual.

### EXEMPTION 7
### EXEMPTION 7 THRESHOLD

(37)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, by revealing the identity of an FBI SA and an FBI professional support employee.

(38)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. In this case, the documents pertaining to a potential civil rights investigation. Thus, there is no doubt that this falls within the law

-12-

enforcement duties of the FBI. Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

## EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(39)    5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... could reasonably be expected to constitute an unwarranted invasion of personal property..."

(40)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these two pages of records against any public interest in disclosure. In asserting exemption (b)(7)(C), each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying data appears in the documents at issue. In withholding this information, the individual's privacy interest was balanced against the public's interest in disclosure. In each instance where the information was withheld, it was determined that individual privacy interests outweighed any public interest. The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its internal operations and investigations. It was determined that the privacy interests are as strong now as when the records were originally created. To reveal names in the context of these records could reasonably be expected to cause embarrassment, humiliation, harassment, unsolicited inquiries, and would not add to the public's understanding

-13-

of the inner workings of the government. In each instance where information was withheld from these two pages of records, it was determined that the individual's privacy rights outweighed the public interest.

### (b)(7)(C)
### Names of one FBI Special Agent and an FBI Professional Support Employee

(41)    Exemption (b)(7)(C) is asserted in conjunction with (b)(6) to protect the name of one FBI SA responsible for conducting the interview recorded in the two pages of records responsive to plaintiff's request to the BFO and one FBI professional support employee assigned to handle tasks relating to this interview.

(42)    The name of one FBI SA was withheld pursuant to Exemption (b)(7)(C) because his assignment to investigations is not by choice, and publicity regarding his involvement in a particular investigation may seriously hamper his effectiveness in conducting future investigations. The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. FBI agents conduct official inquiries into violations of various criminal statutes and in national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless, serious intrusions into people's lives. Many of these people carry grudges which last for years and seek any excuse to harass the agent they deem responsible for these intrusions. The publicity associated with release of an FBI Agent's identity in connection with a particular investigation, such as the FBI's interview of plaintiff, could rekindle animosity towards that agent. There is no public interest to be served through the release of this information.

(43)    The name and telephone number of one FBI professional support employee

have also been withheld pursuant to Exemption (b)(7)(C). This employee was assigned to handle tasks relating to the official interview reported by plaintiff. The employee was, and possibly still is, in a position of having access to information regarding official law enforcement investigations and therefore could become a target of harassing inquiries for unauthorized access to investigations, if his/her identity was released. Further, there is no public interest to be served by releasing the identity of this individual.

## CONCLUSION

(44)     The information contained in this declaration constitutes a complete and accurate description of the actions taken by the FBI pertaining to plaintiff's FOIA/Privacy Act requests. The FBI has conducted a reasonable search for records responsive to the FOIA requests submitted by plaintiff John E. Moore. No responsive records were located after a reasonable search of the JFO and FBIHQ. Plaintiff did not appeal this no records finding, and, therefore, failed to exhaust his administrative remedies for these requests. Each of the two pages of records responsive to plaintiff's request to the BFO was individually reviewed for segregability. There is no additional segregable portion of any of the withheld material which can be released. As demonstrated above, the only information withheld by the FBI consists of information that would disclose or infringe upon the personal privacy of two third parties who are FBI employees. Accordingly, the FBI has released all reasonably segregable, non-exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this _____ day of November, 2007.

DAVID M. HARDY

-15-

Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                          )
                                        )
                                        )
        Plaintiff,                      )
                                        )
                                        )
            v.                          )
                                        )        Civil Action No. 07-00107
GEORGE W. BUSH, et al.,                 )
                                        )
        Defendants.                     )
                                        )

# EXHIBIT A

September 5, 2002

**Federal Bureau of Investigation**
**One Center Plaza**
**Suite 600**
**Boston, Mass. 02108**

**Re. Privacy Act and Freedom of Information Act Request for Access**

**Dear; Agent in Charge**

**This is a request under the Privacy Act of 1947 and the Freedom of Information Act.**

**I request a copy of any records about me maintained at your agency forwarded to my present address. Would like a copy of personnel information form that I filled out that morning and special agents name who interviewed me. Also any other information in your file pertaining to me or any other agency that was contacted.**

**To help you locate my records, I have had the following contacts with your agency: in person visit to your office on 08-02-00. filled out a personnel information form and had a short interview with an agent.**

**Enclosed is a notarized signature that will verify my identity.**

**I request that the information I seek be forwarded by U.S. Mail**

**Thank you for your consideration of this request.**

State of Florida
County of Volusia

The foregoing instrument was acknowledged before me the ___ day of _____, 20__.
by. John E. Moore

_Notary Public Signature_

Amber A Ness
_Printed Name of Notary_

Amber A Ness
My Commission CC822797
Expires April 1, 2003

**Sincerely**
**John E. Moore**
John E. Moore

**9 Pleasant View Cir.**
**Daytona Beach, FL.**
**32118-5511**
**Phone: 386-761-8193**

**Note: address prior**
**to 07-01-01**

**136 Sand Pebble Cir.**
**Port Orange, FL.**
**32119-3698**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                          )
                                        )
                                        )
    Plaintiff,                          )
                                        )
                                        )
         v.                             )
                                        )    Civil Action No. 07-00107
GEORGE W. BUSH, et al.,                 )
                                        )
    Defendants.                         )
                                        )

# EXHIBIT B



**U.S. Department of Justice**

Federal Bureau of Investigation

---

In Reply, Please Refer to
File No. 190-BS-90887

1 Center Plaza
Boston, MA  02108
617-742-5533
September 26, 2002

Mr. John E. Moore
9 Pleasant View Circle
Daytona Beach, FL  32118-5511

Dear Mr. Moore:

This is in response to your Freedom of Information - Privacy Acts (FOIPA) request dated September 5, 2002 for information concerning yourself.

Based on the information provided, a search of the automated indices to the central records system maintained in Boston has located one document consisting of two pages responsive to your request.

Enclosed is a copy of the one responsive document referred to above. Excisions have been made from these pages in order to protect information exempt from disclosure pursuant to the following subsections of Title 5, United States Code, Section 552 and 552a: (j)(2) and (b)(7)(C). See Form OPCA-16a, enclosed, for an explanation of the exemptions.

Notations have been made in the margins of the enclosed pages indicating specific exemptions applied to excised portions of the material.

If you desire, you may submit an appeal from any denial contained herein. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, DC 20530, within 60 days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information

1 - Addressee
1 - Bureau
1 - Boston (190-BS-90887)
SSV/ssv
(3)

Appeal."  Please cite the name of the office to which your
original request was directed.

Sincerely yours,

CHARLES S. PROUTY
Special Agent in Charge

By:
FRANK M. DAVIS
Chief Division Counsel

2



# FEDERAL BUREAU OF INVESTIGATION
## COMPLAINT/QUERY FORM

**(Please fill out completely)**

Date: 10 - 3 - 80

Time: 10:40 AM

NAME: John E Moore
ADDRESS: 126 SAND PEBBLE CIR.
CITY/STATE: PORT ORANGE FL
ZIP CODE: 32119     TELEPHONE: (   ) _____
DATE OF BIRTH: ██████████
SOCIAL SECURITY NUMBER: ████████████████

DESCRIPTION OF COMPLAINT/QUERY: I WAS SET-UP BY LAW
EFORCEMENT OFFICER (RETIRED) I HAVE BEEN
HARRASED FOR 4 YEARS. I CANNOT GET
ANY LEGAL HELD FROM LOCAL, COUNTY,
OR STATE. I HAVE EVIDENCE

b*c ████████████████████████ lives in
████████████ — is harassing Mr. Moore. Moore
seems to be paranoid, his visit was to let
the FBI know he is being watched in FLA.

COPY of
Complaint form

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE

**To:** BOSTON

**From:** BOSTON
COMPLAINT ROOM, SA/IA ▮▮▮▮▮

**Date:** *rec'd @ C7 8/10/00*

Attn: C-7 SUPERVISOR
C-7 ROTOR

**Contact:** ▮▮▮▮▮  EXT. ▮▮▮

**Approved By:** BURKETT JAMES D

**Drafted By:** ▮▮▮▮▮ :mkm

**Case ID #:** BS 62-0

**Title:** John E. Moore
136 Sand Pebble Circle
Port Orange, FLA

**Synopsis:** Transmittal for personal visitor to the Complaint Room.

**Details:** Attached to this communication is Reception Room form indicating captioned individual was a walk-in complainant to the Boston Division Complaint Room. Please serialize into 62-0 for future retrieval.

◆◆

BS 62-0-24654

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                    )
                                  )
                                  )
                                  )
     Plaintiff,                   )
                                  )
          v.                      )
                                  )        Civil Action No. 07-00107
GEORGE W. BUSH, et al.,           )
                                  )
     Defendants.                  )
                                  )

# EXHIBIT C

John E. Moore
9 Pleasant View Cir.
Daytona Beach, FL
32118-5511
386-761-8193
October 2, 2002

Office of Information and Privacy
United States Dept. of Justice
Flag Building, Suite 570
Washington, DC
20530

Ref: F.B.I. B.S.N. File No. 190-BS-90887
Subj: Freedom of Information –Privacy Acts

Dear Co-Director:

I am writing this letter in response to my request to the F.B.I. B.S.N. under the (FOIPA). Also included is a copy of that request. Which was not fulfilled.

First, was my request for the agents full name.

Second, is information as to what agencies were contacted. I feel that the assumption that he has made that I am paranoid is ludicrous, waying on the fact that our total conversation totaled ten minutes. Which included photo's of evidence.

Page 1 of 2

In closing, I hope that you will fulfill my request.

I request that the information I seek will be forwarded by U.S. Mail.

Thank you for your consideration of this request.

Sincerely yours,

John E. Moore

State of Florida
County of Volusia

The foregoing instrument was acknowledged before
me the ___ day of _____, 20___,
by John E. Moore

Notary Public Signature
Amber A Nass
Printed Name of Notary

Amber A Nass
My Commission CC822797
Expires April 1, 2003

September 5, 2002

Federal Bureau of Investigation
One Center Plaza
Suite 600
Boston, Mass. 02108

Re. Privacy Act and Freedom of Information Act Request for Access

Dear; Agent in Charge

This is a request under the Privacy Act of 1947 and the Freedom of Information Act.

I request a copy of any records about me maintained at your agency forwarded to my present address. Would like a copy of personnel information form that I filled out that morning and special agents name who interviewed me. Also any other information in your file pertaining to me or any other agency that was contacted.

COPY

To help you locate my records, I have had the following contacts with your agency: in person visit to your office on 08-02-00. filled out a personnel information form and had a short interview with an agent.

Enclosed is a notarized signature that will verify my identity.

I request that the information I seek be forwarded by U.S. Mail

Thank you for your consideration of this request.

Sincerely
John E. Moore

9 Pleasant View Cir.
Daytona Beach, FL.
32118-5511
Phone: 386-761-8193

Note: address prior to 07-01-01

136 Sand Pebble Cir.
Port Orange, FL.
32119-3698

7-1-00 THE NEWS-JOURNAL 6A

# FBI uses Holocaust to teach new agents

**By MICHAEL J. SNIFFEN**
Of The Associated Press

WASHINGTON — The FBI has begun teaching its new agents how a failure by police to protect citizen rights helped produce the Holocaust in which 6 million Jews, as well as other minorities and political dissidents were murdered by the Nazis.

The training segment for agents-to-be at the FBI Academy began last month and was announced Friday by FBI Director Louis J. Freeh; Sara J. Bloomfield, director of the U.S. Holocaust Memorial Museum and Abraham H. Foxman, national director of the Anti-Defamation League.

"We do this early on in their training ... to remind them of the horror and evil which can result from not just a government, but particularly law enforcement, abandoning its mission to protect people and becoming the engine of oppression," Freeh said.

The trainees are given a guided tour of the Holocaust Museum here and instruction about Adolf Hitler's use of the police in Germany in the 1930s and 1940s to round up Jews, political opponents and other targeted groups.

There is a classroom discussion and then trainees must write an essay on the question: "Of what relevance is this history to you as a human being and a law enforcement official?"

After the first session, a student wrote, "It has taught me that making sure our Constitution is strictly followed should be a number one priority throughout my career."

The topic of police complicity in the Holocaust has been a concern of Freeh's for some time. In 1994, over objections from the State Department and the U.S. ambassador to Poland, Freeh visited the Nazi death camp at Auschwitz during a European trip and gave a speech at Jagellonian University in nearby Krakow, Poland, on the police role in Hitler's oppression.

Foxman applauded the FBI's commitment to "law enforcement's critical role as defenders of the Constitution and guardians of individual rights" and said the training "has tremendous potential to impact the next generation of law enforcement leadership."

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                     )
                                   )
                                   )
    Plaintiff,                     )
                                   )
        v.                         )
                                   )     Civil Action No. 07-00107
GEORGE W. BUSH, et al.,            )
                                   )
    Defendants.                    )
                                   )

# EXHIBIT D

U.S. Department of Justice

Office of Information and Privacy

_____

Telephone: (202) 514-3642

_Washington, D.C. 20530_

NOV 5

Mr. John E. Moore
9 Pleasant View Circle
Daytona Beach, FL 32118-5511

     Re:    FBI/BSFO No. 968538

Dear Mr. Moore:

     This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on October 16, 2002.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **03-0136**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

                  Sincerely,

                  Priscilla Jones
                  Acting Chief, Administrative Unit

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN E. MOORE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-00107 |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Defendants. ) | |

# EXHIBIT E

**U.S. Department of Justice**

Office of Information and Privacy

---

Telephone: (202) 514-3642

Washington, D.C. 20530

Mr. John E. Moore
9 Pleasant View Circle
Daytona Beach, FL  32118-5511

Re:  Appeal No. 03-0136
     Request No. 968538
     RLH:ADW:BVE

Dear Mr. Moore:

You appealed from the action of the Boston Field Office of the Federal Bureau of Investigation on your request for access to records concerning you.

After carefully considering your appeal, I have decided to affirm the FBI's action on your request.  Please be advised that the Boston Field Office located only two pages of records responsive to your request from one main file entitled Administrative Inquiry.

These records are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.96 (2002).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to the records you requested.

The FBI properly withheld from the pages released to you certain information that is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(C).  This provision concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.  In this instance, the FBI withheld the name of the FBI special agent who met with you at the Boston Field Office and the name of a third party not of investigative interest to the FBI.  I have determined that this information is not appropriate for discretionary release.

Further, I am returning the three folders of information you included with your letter to this Office dated November 4, 2002.  For your information, the function of the Office of Information and Privacy is limited to the adjudication of appeals from the denials of access to information pursuant to the FOIA and Privacy Act by components of the Department of Justice.  The information contained in the folders is unnecessary for the adjudication of your FOIA.

-2-

    If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                      Sincerely,


                      Richard L. Huff
                      Co-Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                          )
                                        )
                                        )
                                        )
    Plaintiff,                          )
                                        )
        v.                              )          Civil Action No. 07-00107
                                        )
GEORGE W. BUSH, et al.,                 )
                                        )
    Defendants.                         )
                                        )

# EXHIBIT F

John E. Moore
9 Pleasant View Cir.
Daytona Beach, FL.
32118-5511

August 31, 2006

Federal Bureau of Investigation
FOIA/Privacy Act Section
Records/Information Dissemination Section
Records Management Division
Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC.
20535-0001

Re: Freedom of Information Request.

Dear Sir or Madam:

This letter constitutes a request under the Freedom of Information Act (5 U.S.C. 552).

I am requesting the release of all records pertaining to me, John E. Moore on the F.B.I. database.

I request a waiver of fees for this request. This information is for my own personal use. If I am denied a waiver of fees, please inform me of your decision and cost of this information.

As the FOIA requires, I will look forward to your response within twenty (20) working days.

Sincerely,

John E. Moore

Section 552a (i) (2)

# DECLARATION

I swear or affirm under penalty of perjury that I am:

Name: John Edmond Moore

Data of Berth: ████████████████

Current address: 9 Pleasant View Cir.
Daytona Beach, Florida
32118-5511

This declaration is submitted in lieu of my notarized signature pursuant to Title 28, United States Code (U.S.C.), Section 1746

I certify that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, U.S.C., Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that knowingly and willfully requesting or obtaining any record (s) concerning an individual under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a (i) (3) as a misdemeanor and by a fine of not more than $5,000.

Signature: _John E. Moore_    Date _08-31-06_

Pg.3

# Background Information

John E. Moore
9 Pleasant View Cir.
Daytona Beach, Fl.
32118-5511

Phone 

S/N

Dob.

Present address:
9 Pleasant View Cir.
Daytona Beach, Fl.
32118-5511

Address prior to 07-01-01
136 Sand Pebble Cir.
Port Orange, Fl.
32119-3698

I certify that the above information is true and accurate.

John Edmond Moore

*John Edmond Moore*

dtd. 08-31-06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN E. MOORE, <br><br> Plaintiff, <br><br> v. <br><br> GEORGE W. BUSH, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 07-00107 <br> ) <br> ) <br> ) <br> ) |

# EXHIBIT G



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 25, 2006

MR. JOHN EDMOND MOORE
9 PLEASANT VIEW CIRCLE
DAYTONA BEACH, FL 32118-5511

Request No.: 1059107- 000
Subject: MOORE, JOHN EDMOND

Dear Requester:

☒　　This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐　　For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐　　To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐　　If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒　　We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐　　Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
　Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,                          )
                                        )
                                        )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )
                                        )       Civil Action No. 07-00107
GEORGE W. BUSH, et al.,                 )
                                        )
        Defendants.                     )
                                        )


# EXHIBIT H



U.⌐  epartment of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 29, 2006

MR. JOHN EDMOND MOORE
9 PLEASANT VIEW CIRCLE
DAYTONA BEACH, FL 32118 5511

Request No.: 1059107- 000
Subject: MOORE, JOHN EDMOND

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated and manual indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify <u>any</u> information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- **The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The NNCP search.

**FOR GENERAL INFORMATION ABOUT THE FBI,
CHECK OUT OUR WEBSITE AT
http://www.fbi.gov**

3-23-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,              )
                                )
                                )
        Plaintiff,        )
                                )
            v.            )     Civil Action No. 07-00107
                                )
GEORGE W. BUSH, et al.,    )
                                )
      Defendants.     )

# EXHIBIT I



# FEDERAL BUREAU OF INVESTIGATION
## COMPLAINT/QUERY FORM

**(Please fill out completely)**

Date: _10 - 3 - 00_

Time: _10:40 AM_

NAME: _John E Moore_
ADDRESS: _126 SAND PEBBLE CIR_
CITY/STATE: _PORT ORANGE  FL_
ZIP CODE: _32119_    TELEPHONE: ( ) _____
DATE OF BIRTH: ▮▮▮▮▮▮▮▮
SOCIAL SECURITY NUMBER: ▮▮▮▮▮▮▮▮▮▮▮▮

DESCRIPTION OF COMPLAINT/QUERY: _I WAS SET-UP BY LAW_
_EFORCEMENT OFFICER (RETIRED) I HAVE BEEN_
_HARRASED FOR 4 YEARS. I CANNOT GET_
_ANY LEGAL HELD FROM LOCAL, COUNTY,_
_OR STATE  I HAVE EVIDENCE_
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ — lives in
▮▮▮▮▮▮ — is harassing Mr. Moore. Moore
seems to be paranoid, his visit was to let
the FBI know he is being watched in FLA.

Copy in
Complaint floor

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:**   ROUTINE

**To:**   BOSTON

**Date:** rec'd @ C7 8/10/00

**Attn:**   C-7 SUPERVISOR
C-7 ROTOR

**From:**   BOSTON
COMPLAINT ROOM, SA/IA ▊▊▊▊▊▊▊

Contact: ▊▊▊▊▊▊   EXT. ▊▊▊

**Approved By:** BURKETT JAMES D

**Drafted By:** ▊▊▊▊▊▊▊:mkm

**Case ID #:** BS 62-0

**Title:**   John E. Moore
136 Sand Pebble Circle
Port Orange, FLA

**Synopsis:**   Transmittal for personal visitor ▊▊▊▊▊▊▊ Complaint Room.

**Details:**   Attached to this communication is Reception Room form indicating captioned individual was a walk-in complainant to the Boston Division Complaint Room.  Please serialize into 62-0 for future retrieval.

♦♦

BS 62-0-24554

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN E. MOORE,               )
                                  )
          Plaintiff,        )
                                  )     Civil Action No. 07-0107 (RMC)
                                  )
v.                              )
                                  )
GEORGE BUSH,            )
President of the United States, et al.    )
                                  )
                                  )
          Defendants.     )
_____)

## [PROPOSED] ORDER

     This matter having come before the Court on the motion of the remaining federal

defendants for dismissal of the complaint, or alternatively, for summary judgment, plaintiff's

opposition, if any, and defendants' reply, if any, it is hereby

     **ORDERED** that the defendants' Motion to Dismiss/Motion for Summary Judgment is

hereby **GRANTED**.  And it is further

     **ORDERED** that the complaint is hereby dismissed with prejudice as it concerns

defendants the National Security Agency and the United States Department of Justice.


     **SO ORDERED** on this ____ day of _____, 2008.


                                      _____
                                      ROSEMARY M. COLLYER
                                    UNITED STATES DISTRICT JUDGE