# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN E. MOORE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civ. No. 07-107 (RMC)** |
| ) | |
| **GEORGE W. BUSH,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

John Moore filed a complaint against numerous defendants alleging that he was

"implanted with a micro-chip" for the purpose of controlling his brain and that he was the victim of

a conspiracy to develop and use brainwave technology for warrantless surveillance.  He also seeks

records related to such alleged brainwave technology and surveillance via the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  Compl. ¶¶ 16, 29, 33 & 40.  Previously, the Court

dismissed all claims, other than the FOIA claim, and all defendants, other than the Department of

Justice ("DOJ") and the National Security Agency ("NSA").  *See* Mem. Op. [Dkt. # 45] filed Feb.

26, 2008.  Now, DOJ and NSA seek summary judgment on the remaining FOIA claim.[1]  Because

---

[1] DOJ and NSA moved in the alternative to dismiss for insufficient service of process due
to the failure to serve the United States Attorney and  the Attorney General as required by Fed. R.
Civ. P. 4(i)(1)(A).  Because *pro se* plaintiffs are given great latitude to correct defects in service of
process, the Circuit requires district courts to permit pro se litigants time to perfect service.  *Moore
v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993).  Thus, while a district court may
dismiss without prejudice a case where the complaint has not been properly served within 120 days
under Federal Rule of Civil Procedure 4(m), a court should not do so when it did not first inform the
plaintiff of the consequences of failing to effect proper service and when the defendants have not been
prejudiced.  *Dominguez v. Dist. of Columbia*, 536 F. Supp. 2d 18, 23 (D.D.C. 2008); *Lindsey
v. United States*, 448 F. Supp. 2d 37, 47 (D.D.C. 2006).  Because this Court did not previously warn
Mr. Moore of the consequences of failure to effect service and DOJ and NSA have not been

they conducted an adequate search for documents and because various exemptions apply, their motion will be granted.

## I.  FACTS

Mr. Moore's claim against DOJ arises from three separate requests for records from its constituent agency, the Federal Bureau of Investigation ("FBI").[2]  First, on September 5, 2002, Mr. Moore submitted a request to the FBI's Boston Field Office requesting a copy of a "personnel information form that I filled out that morning and special agents [sic] name who interviewed me. Also any other information in your file pertaining to me or any other agency that was contacted." Defs.' Mem. in Supp. of  Mot. to Dismiss, or for Summ. J. ("Defs.' Mem.") [Dkt. # 49],  Hardy Decl., Ex. A.  The Boston Field Office conducted a search of the General Indices of the FBI's Central Records System ("CRS") using the name Moore, John Edmond.  *Id.* ¶¶ 25-26.  This search would locate records using the phonetic sounds of "Moore, John Edmond," "Moore, John E.," "Moore, J. Edmond," "Moore, Edmond," and "Moore, J.E."  *Id.* ¶ 26.  The FBI then used Mr. Moore's "birth date and social security number to facilitate the identification of responsive records." *Id.*  The FBI conducted a second search of CRS and identified an additional potentially responsive document.  *Id.* ¶ 27.  However, the FBI could not corroborate whether the document was responsive

---

prejudiced, the Court will not grant dismissal on the basis of improper service.  Further, because DOJ and NSA have fully briefed the merits of the case, the Court addresses the merits.  *See Trakas v. Quality Brands, Inc.* 759 F.2d 185, 186-87 (D.C. Cir. 1985) (disposition on the merits is favored).

[2] While Mr. Moore's complaint asserts a FOIA claim, his requests for records pertaining to himself also fall under the Privacy Act, 5 U.S.C. § 552a.  *See id.* § 552a(d)(1)-(3) (Privacy Act ensures that an individual can access government records regarding himself and request amendment to correct any inaccuracies).  The FBI processed Mr. Moore's requests under FOIA for maximum disclosure.   Hardy Decl. ¶ 31; *compare* 5 U.S.C. § 552a(a)(5) (Privacy Act only covers records maintained in a "system of records" searchable by name or individual identifier) *with id.* § 552(b) (FOIA covers all agency "records").

because the file containing the document was destroyed pursuant to standard record destruction policies on January 18, 2007. *Id.* As a result of its search, the Boston Field Office released two pages to Mr. Moore, but withheld the name of an FBI Special Agent and the name and phone number of an FBI support employee asserting that release of these names and phone number would constitute an unwarranted invasion of personal privacy and thus the release of such information was exempt under FOIA Exemptions 6 and 7C, 5 U.S.C. §§ 552(b)(6) & (7)(C). *Id.* ¶¶ 4, 7, 29-43. Mr. Moore appealed, and the DOJ Office of Information and Policy affirmed the FBI's action on Mr. Moore's request. *Id.* ¶¶ 9-10.

Mr. Moore submitted a second request for records, this time submitting his request to the FBI's Jacksonville Field Office on approximately February 3, 2003.[3] *Id.* ¶ 17. According to the FBI's FOIA and Privacy Act Document Processing System, the FBI's repository for FOIA request records, the Jacksonville Office advised Mr. Moore that no responsive records were located. *Id.* The request and response itself are not available because the file containing such documents was destroyed pursuant to routine record destruction policies on April 15, 2007. *Id.* No appeal was filed. *Id.* §19.

Third, on August 31, 2006, Mr. Moore submitted a request to FBI headquarters seeking all records related to himself. *Id.* ¶ 12. After a search of the FBI's CRS, the FBI responded that it had no such records. *Id.* ¶ 14. Mr. Moore did not appeal. *Id.* ¶ 16.

Mr. Moore's FOIA claim against NSA arises from an August 31, 2006, letter to NSA, which sought: (1) information pertaining to himself within NSA databases; (2) a "statement

---

[3] The FBI does not have any documents from Mr. Moore requesting records from the Jacksonville Field Office, but it does have a record that it opened a FOIA document processing record on February 3, 2003. Defs.' Mem., Hardy Decl. ¶ 17.

pertaining to the existence of brainwave technology"; (3) whether "the system instruction [was] disseminated at Falls Church[,] VA."; and (4) whether "the system detector chip [was] implanted in the temporal bone area." Defs.' Mem., Siers Decl., Attach. A. NSA responded to Mr. Moore's request on September 15, 2006. Siers Decl. ¶ 11. Concerning Mr. Moores' first request, NSA indicated that it had searched its databases that would contain information on current or former NSA affiliates, (i.e., employees, applicants, military members, contractors and visitors) including security, personnel, and training files. Siers Decl. ¶¶ 11 & 13. Because Mr. Moore had never been affiliated with NSA, it could not locate any responsive records within those filing systems. *Id*. Also, because Mr. Moore requested all records the agency maintains on him, NSA responded as though he had asked for records on "the surveillance, targeting, and/or domestic collection of him by NSA." *Id*. ¶ 14. NSA could not confirm or deny whether such records exist because any response would disclose information that is classified or secret pursuant to Executive Order and statute and that is thereby exempt from release under FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) & (3). *Id*. ¶¶ 11, 15-23.

As to Mr. Moore's second through fourth requests, NSA did not provide any information because those requests seek statements by NSA and FOIA does not require agencies to create records. *Id*. ¶ 24. Mr. Moore did not appeal the response to his first and third requests, but he did appeal the NSA's refusal to provide information with regard to the second and fourth requests. The NSA denied his appeal. *Id*., Attach. D.

Mr. Moore filed this suit challenging the FBI and NSA's responses to his requests for documents. He insists that he is a "target" who is "plugged in" to NSA's brainwave tracking system and therefore NSA should respond to his request for statements regarding the existence of brainwave

technology and implantation of a micro-chip.  Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Mot. [Dkt. # 54] ("Pl.'s Opp'n") at 2, 7, 11.  He also seeks the name of the FBI agent who interviewed him in Boston, asserting, "Plaintiff claims this agent in his zeal to twist the facts, use[d] 'paranoid tendencies' in his descriptive comment describing this short interview.  As he continues his statement contending that plaintiff believes that he 'is being watched' is absolutely devoid of merit and ludicrous." *Id*. at 2.  Further, Mr. Moore requests that the FBI and NSA "disclose to Plaintiff all unlawful surveillance of Plaintiffs' Communication [sic], also the use of Brainwave Technology carried out pursuant to the program." *Id*. at 15.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary

judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp.

477, 481 n.13  (D.D.C. 1980).  In a FOIA case, a court may award summary judgment solely on the

basis of information provided by the agency in declarations when the declarations describe "the

documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that

the information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project*

*v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### III.  ANALYSIS

#### A.  Exhaustion of Administrative Remedies

Prior to filing a lawsuit, a FOIA requester is required to exhaust his administrative

remedies, *Dettmann v. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986), including

administrative appeals.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990).  Mr. Moore

failed to appeal the denial of information by the FBI's Jacksonville Field Office and FBI

Headquarters and those claims must be dismissed without prejudice.

#### B.  FOIA Claims

FOIA requires agencies of the federal government to release records to the public

upon request, unless one of nine statutory exemptions applies.  *See NLRB v. Sears, Roebuck & Co.*,

421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b).  To prevail in a FOIA case, the plaintiff must show that

an agency has (1) improperly (2) withheld (3) agency records.  *United States Dep't of Justice v. Tax*

*Analysts*, 492 U.S. 136, 142 (1989).  Even though FOIA "strongly favors prompt disclosure, its nine

enumerated exemptions are designed to protect those legitimate governmental and private interests

that might be harmed by release of certain types of information."  *August v. FBI*, 328 F.3d 697, 699

(D.C. Cir. 2003) (internal quotation marks omitted). The defendant in a FOIA case must show that the search for responsive documents was adequate, any exemptions claimed actually apply, and reasonably segregable non-exempt information has been disclosed after deletion of exempt information. *See Pub. Employees for Envtl. Responsibility v. Dep't of Interior*, Civ. No. 06-182, 2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006).

### 1.  Request for Documents from FBI's Boston Field Office

### a.  Adequacy of the Search

The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby*, 920 F.2d at 68. Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

An agency may prove the reasonableness of its search via the declaration of responsible agency officials, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project*, 656 F.2d at 738. An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely

speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted).

Via the Hardy Declaration, the FBI's Boston Field Office has shown that it conducted a search reasonably calculated to uncover all relevant documents in response to Mr. Moore's request. *See Steinberg*, 23 F.3d at 551.   It searched the General Indices CRS using the name Moore, John Edmond, to located records using the phonetic sounds of "Moore, John Edmond," "Moore, John E.," "Moore, J. Edmond," "Moore, Edmond," and "Moore, J.E."  Hardy Decl. ¶¶ 25-26.  As a result of its search, the Boston Field Office released two pages to Mr. Moore, but withheld the name of an FBI Special Agent and the name and phone number of an FBI support employee under various exemptions.  *Id.* ¶¶ 4, 7, 29-43.  Mr. Moore has cited no contrary evidence, nor has he submitted evidence of bad faith.  Mr. Moore's speculative claim that other documents regarding alleged brainwave surveillance exist is insufficient to rebut Mr. Hardy's good faith affidavit.  *SafeCard*, 926 F.2d at 1200.

### b.  FOIA Exemptions 6 and 7(C)

The FBI's Boston Field Office redacted the name of an FBI Special Agent and the name and phone number of an FBI support employee pursuant to the personal privacy exceptions set forth in FOIA Exemptions 6 and 7(C).  Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files"[4] if their disclosure would "constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 522(b)(6) (emphasis added). Exemption 7(C) exempts disclosure of information based on privacy concerns by permitting an

---

[4] Exemption 6 has been interpreted broadly; the threshold for application of this Exemption is crossed if information sought applies to a "particular individual."  *New York Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990).

agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 522(b)(7)(C) (emphasis added).  To determine whether an agency has properly invoked one of these personal privacy exemptions, a court must balance the public interest in disclosure against the privacy interest the exemption is intended to protect.  *Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (balancing test applies to Exemption 6); *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989) (balancing test applies to Exemption 7(C)).

Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure "could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs."  *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999); *see also O'Keefe v. Dep't of Defense*, 463 F. Supp. 2d 317 (E.D.N.Y. 2006) (the release of the names of the Department of Defense employees who had conducted an investigation could subject them to harassment or embarrassment and would not serve any public interest; their identities were exempt from disclosure under Exemption 7(C)).  Here, Mr. Moore seeks the name and phone number of an FBI support employee who received Mr. Moore's complaint at the Boston Field Office and the name of the FBI Special Agent who interviewed him there.  Release of such identifying information could subject the Agent and the employee to harassment.  Hardy Decl. ¶¶ 35-36.  Mr. Moore has not articulated any public interest whatsoever that would be served by disclosure.  Thus, the balance weighs in favor of non-disclosure of the

identifying information under Exemptions 6 and 7(C).[5]

## 2. Request for Documents from the NSA

### a. Adequacy of the Search

Via the Siers Declaration, NSA has shown that it too conducted a search reasonably calculated to uncover all relevant documents in response to Mr. Moore's requests. *See Steinberg*, 23 F.3d at 551. NSA searched databases that would contain information on current or former NSA affiliates, (i.e., employees, applicants, military members, contractors and visitors) including security, personnel, and training files. Siers Decl. ¶¶ 11 & 13. Because Mr. Moore has never been affiliated with NSA, NSA could not locate any responsive records within those filing systems. *Id.* ¶ 13. Mr. Moore has cited no contrary evidence, nor has he submitted evidence of bad faith. Again, Mr. Moore's speculative claim that NSA must have brainwave surveillance records is insufficient to rebut the NSA's good faith affidavit. *SafeCard*, 926 F.2d at 1200. NSA discharged its obligation to search for records requested by Mr. Moore.

### b. FOIA Exemptions 1 and 3

Because Mr. Moore requests all records the agency maintains on him, NSA also responded as though he had asked for records on "the surveillance, targeting, and/or domestic collection of him by NSA." Siers Decl. ¶ 14. NSA properly asserted a "Glomar" response,[6] stating

---

[5] Exemption (j)(2) under the Privacy Act also applies; this section exempts from disclosure systems of records maintained by an agency "which performs as its principal function any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2).

[6] The "Glomar" response is named after the ship involved in *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1011 (D.C. Cir. 1976). In that case, the FOIA requester sought information regarding a ship named the "Hughes Glomar Explorer," and the CIA refused to confirm or deny whether it had any relationship with the vessel because to do so would compromise national security or would divulge intelligence sources and methods. *Id.* at 1011 & 1014-15.

that it could not confirm or deny the existence of any records it may have related to "the surveillance, targeting, and/or domestic collection" of Mr. Moore by NSA because to do so (1) could compromise national security and such records are exempt under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), and (2) could divulge intelligence sources and methods and such records are exempt under Exemption 3. *Id*. § 552(b)(3); *see also* Siers Decl. ¶ 14.

Exemption 1 protects from release information specifically authorized by Executive Order to be kept secret in the interest of the national defense or foreign policy and classified pursuant to such Executive Order. 5 U.S.C. § 552(b)(1). Executive Order 12958, as amended by Executive Order 13292 on March 25, 2003, provides that intelligence activities and intelligence sources and methods may be classified. Confirming that Mr. Moore was or was not a target of NSA surveillance is classified under the Executive Order, and such records are exempt from release under FOIA Exemption 1. Siers Decl. ¶¶ 15-17.

Exemption 3 provides that FOIA does not require the release of matters that are specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3). As applicable in this case, confirmation or denial that a particular individual has been or is the target of NSA surveillance efforts is precluded by statute. Section 102A(i)(l) of the Intelligence Reform and Terrorist Prevention Act of 2004, 50 U.S.C. § 403-1(i)(l), provides that "the Director of National Intelligence shall protect intelligence sources and methods from authorized disclosure." *See also* 18 U.S.C. § 798 (prohibits the unauthorized disclosure of classified information concerning communications intelligence activities of the United States or obtained by the process of communication intelligence derived from the communications of any foreign government); Pub. L. No. 86-36 § 6, 73 Stat. 63,

64 (1959), *quoted in* 50 U.S.C. § 402 note (Section 6 of the National Security Agency Act of 1959 provides: "[N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization of any function of the National Security Agency, [or] of any information with respect to the activities thereof . . . ."; *Linder v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996) (NSA's statutory privilege is absolute). "Acknowledging the existence or nonexistence of the information Plaintiff requests . . . would reveal NSA's organization, functions, and activities by revealing the success or failure of NSA's activities." Siers Decl. ¶ 23. Because the disclosure of the information that Mr. Moore seeks is prohibited by statute, FOIA Exemption 3 applies and disclosure is not required.

### c.  Agencies Do Not Have to Create Documents for Release under FOIA

With regard to Mr. Moore's requests for statements regarding whether brainwave technology exists, whether a "system instruction" was disseminated at Falls Church, and whether a "system detector chip" was implanted in Mr. Moore's temporal lobe, NSA is not required to respond. FOIA does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it has created and retained. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980). Accordingly, NSA properly denied Mr. Moore's request for such statements.

### 3.  Segregability

FOIA requires that if a document contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after redaction of the exempt portions, unless the non-exempt portions are "inextricably intertwined" with the exempt portions. 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Here, the Hardy Declaration indicates that the FBI's Boston Field Office redacted exempt information from the two pages released to Mr. Moore. Hardy Decl. ¶ 44. The only information redacted was the name and phone number of an FBI support employee and the name of an FBI Special Agent. *Id.* ¶¶ 40, 42-43; *see id.* Ex. I. Thus, the FBI's Boston Field Office did release reasonably segregable material to Mr. Moore. With regard to NSA, segregability is not an issue. NSA could not confirm or deny whether it had any responsive documents, and such records, if they do exist, are exempt from disclosure under Exemptions 1 and 3 in their entirety.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss or for summary judgment filed by DOJ and NSA [Dkt. # 49] will be granted in part and denied in part. The motion to dismiss for insufficient service of process will be denied. The FOIA claims against the FBI's Jacksonville Field Office and FBI Headquarters will be dismissed without prejudice due to failure to exhaust administrative remedies. Further, the DOJ and NSA's motion for summary judgment will be granted and summary judgment will be entered with regard to the FOIA claims pertaining to the FBI's Boston Field Office and NSA. All other pending motions will be denied as moot. A memorializing order accompanies this Memorandum Opinion.

Date: February 23, 2009                                        /s/
                                                    _____
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge